Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias (WDC# 442007)*
Elisabeth C. Frost (WDC# 1007632)*
John M. Geise (WDC# 1032700)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WA# 42612)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
AKhanna@perkinscoie.com

*Admitted Pro Hac Vice

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Mecinas, *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>Katie Hobbs, in her official capacity as the Arizona Secretary of State,<br><br>             Defendant. | No. 19-cv-05547-DJH<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

    A.    Position Bias ................................................................................................. 2

    B.    Arizona's Ballot Order Statute .................................................................... 5

III.   ARGUMENT ....................................................................................................... 8

    A.    Plaintiffs are highly likely to succeed on the merits ................................... 9

        1.   Legal Standard ................................................................................... 9

        2.   The Ballot Order Statute violates the First and Fourteenth
            Amendments ..................................................................................... 10

        3.   Arizona has no interests sufficient to justify the burdens
            on Plaintiffs' rights. ......................................................................... 14

    B.    Plaintiffs will suffer irreparable injury absent an injunction ..................... 15

    C.    The balance of the equities and the public interest favor an injunction ......... 16

IV.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Akins v. Sec'y of State*,
    154 N.H. 67 (N.H. 2006) ........................................................................ 4, 11

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ..................................................................................... 9

*Bush v. Gore*,
    531 U.S. 98 (2000) ..................................................................................... 10

*City of Cleburne v. Cleburn Living Ctr.*,
    473 U.S. 432 (1985) ................................................................................... 10

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008) ..................................................................................... 9

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) ..................................................................... 8

*Gould v. Grubb*,
    14 Cal. 3d 661 (1975) ...................................................................... 4, 11, 13

*Graves v. McElderry*,
    946 F. Supp. 1569 (W.D. Okla. 1996) ........................................ 11, 13, 14, 15

*Holtzman v. Power*,
    62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970).......... 4, 14, 15

*Jacobson v. Lee*,
    No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15,
    2019) .............................................................................................. passim

*Kautenberger v. Jackson*,
    85 Ariz. 128 (1958) ............................................................................ 4, 5, 14

*League of Women Voters of N. Carolina v. N. Carolina*,
    769 F.3d 224 (4th Cir. 2014) ..................................................................... 16

*Mann v. Powell*,
    314 F. Supp. 677 (N.D. Ill. 1969), *aff'd,* 398 U.S. 955 (1970)................................ 5, 11

*McLain v. Meier*,
    637 F.2d 1159 (8th Cir. 1980) ..................................................... 3, 11, 13, 15

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .............................................................. 15, 16

*Nat. Law Party of U.S. v. Fed. Elec. Comm'n*,
    111 F. Supp. 2d 33 (D.D.C. 2000) ............................................................. 10

*Netsch v. Lewis*,
    344 F. Supp. 1280 (N.D. Ill. 1972) ........................................................ 4, 16

*Norman v. Reed*,
    502 U.S. 279 (1992) ............................................................................. 9

*Pub. Integrity All., Inc. v. City of Tucson*,
    836 F.3d 1019 (9th Cir. 2016) .................................................................. 9

*Sanders Cty. Republican Cent. Comm. v. Bullock*,
    698 F.3d 741 (9th Cir. 2012) ................................................................... 16

*Sangmeister v. Woodard*,
    565 F.2d 460 (7th Cir. 1977) ......................................................... 3, 14, 15

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) .................................................................. 8

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ............................................................... 9, 14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................. 8

**STATUTES**

A.R.S. § 16-464 ............................................................... 1, 5, 14, 16

A.R.S. § 16-502(E) ................................................................ 1, 6, 10

A.R.S. § 16-502(H) ................................................................... passim

**OTHER AUTHORITIES**

Arizona Constitution ............................................................................... 4

U.S. Constitution First and Fourteenth Amendments ................................... 9, 10

# I.     INTRODUCTION

This is a case about the constitutionality of A.R.S. § 16-502(E) (the "Ballot Order Statute"), an Arizona law that mandates that all of the general election ballots in any given county must list first—for every partisan race—candidates who belong to the same political party as the candidate who won the most votes in that county in the last gubernatorial election (the "favored party"). No candidates who affiliate with any other party—including those similarly situated—have any chance or hope of being listed first on any ballot within the county.

This is no mere issue of candidate ego or election administration; because of a well-documented phenomenon known as "position bias" or "primacy effect," the first-listed candidate gains a significant electoral advantage merely from being listed first. Experts have demonstrated primacy effect's significant impact on elections time and time again, and Arizona presents no exception. Even the most conservative analysis establishes that the first ballot position gives candidates in Arizona a boost of several percentage points over their later-listed opponents—a statistically significant advantage solely due to their placement on the ballot. Moreover, the lopsided distribution of Arizona's population across its counties, combined with gubernatorial election results over the years, means that the vast majority of Arizona's population have seen *only* Republican candidates listed first on their general election ballots for 31 of the 39 years that the Ballot Order Statute has been in operation.

There is no constitutionally justifiable reason for giving one major party—and all the candidates who affiliate with it—any state-mandated advantage, much less one as strikingly uneven as this, based arbitrarily on the election results of a single, unrelated race run in a different election cycle. In fact, Arizona law deliberately equalizes the advantage conferred by the first position on the ballot when partisanship is not at issue. In primary elections, the State requires that all candidates' names are rotated across precincts such that each appears an equal number of times in each ballot position. *See* A.R.S. § 16-464. And even during general elections when candidates from the same party run for the

1

same office, their names must be rotated so that each occupies the top position on a roughly equal number of ballots. *See* A.R.S. § 16-502(H). It is only when candidates from *different* parties are running against each other that the State uses an arbitrary metric—countywide gubernatorial votes—to grant one party the entire benefit of being listed first.

Unless the Ballot Order Statute is enjoined, Democratic candidates will go into the 2020 general election with a state-inflicted disadvantage: because of Governor Ducey's performance in 2018, a full *82% of Arizonans* will be presented with ballots that list Republican candidates first in every partisan race. The result will be irreparable constitutional injuries to the Democratic committees, entities, and voters who are the Plaintiffs in this case. Under these circumstances, each of the factors that the Court must consider favors issuing a preliminary injunction prohibiting the Defendant Secretary of State (the "Secretary") from enforcing the Ballot Order Statute, and requiring her instead to use a non-discriminatory system that gives similarly-situated major-party candidates an equal opportunity to be listed first on the ballot.

## II. BACKGROUND

### A. Position Bias

It is a well-studied and consistently demonstrated phenomenon that a notable percentage of people manifest bias toward selecting the first in a set of visually-presented options, as with candidate names on election ballots. Decl. of Elisabeth Frost in Supp. of Mot. for Preliminary Injunction ("Frost Decl."), Ex. 1 (Expert Rpt. of Jonathan Rodden ("Rodden Rpt.")); *see generally* Frost Decl., Ex. 2 (Expert Rpt. of Jon Krosnick ("Krosnick Rpt.") (surveying research)). This bias toward selecting the first option strongly influences decisions in areas ranging from consumer behavior to students taking multiple-choice tests. Rodden Rpt. at 7-8. It also influences elections by giving the first-listed candidate a meaningful advantage simply as a result of being listed first. Rodden Rpt. at 1-2; *see generally* Krosnick Rpt.[1]

---

[1] One piece of this observed advantage is that the candidate listed first on a ballot is least harmed by proximity errors, which occur when voters fail to accurately translate

Study after study has confirmed that position bias has a statistically-significant effect on election outcomes. Dr. Jon Krosnick, a Political Science Professor at Stanford University, has studied ballot order for over 20 years, and has concluded that position bias is "overwhelmingly prevalent" in elections. Krosnick Rpt. at 13. Dr. Krosnick's 2014 study of 76 elections over a 30-year period found statistically-significant position bias effects in more than 85% of races, with the average advantage to the first-listed candidate ranging from .5 to 4.0 percentage points. Krosnick Rpt. at 14; *see also Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, 2019 WL 6044035, at *12 (N.D. Fla. Nov. 15, 2019). These conclusions have been repeatedly reinforced by similar research from others. *Id.* at 14-17. In 2019, Dr. Krosnick combined data from those studies—which jointly included observations across 1,084 elections spanning several decades—and concluded that 84% of the studied elections displayed position bias. *Id.* at 28-29. The likelihood that this result would appear by chance is just .000001 percent. *Id.* at 28. In fact, only one modern study—which concerned elections in Afghanistan—has found no statistically significant evidence of ballot order effect. *See Jacobson*, 2019 WL 6044035, at *11 n.15; *see also* Krosnick Rpt. at 23-25.[2]

Consistent with these findings, federal and state courts have repeatedly recognized that position bias gives an advantage to first-listed candidates. *See*, *e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980) (affirming "finding of ballot advantage in the first position" and holding unconstitutional statute requiring party of candidate receiving most votes in prior congressional election be listed first); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977) ("This court will not accept a procedure that invariably awards

---

their voting intentions and mistakenly select the choice before or after their intentioned choice. *Jacobson*, 2019 WL 6044035, at *16 (crediting expert testimony that "voters intending to vote for the first-listed candidate make fewer 'proximity errors' than do voters intending to vote for candidates listed in lower positions within an office block.").

[2] Dr. Krosnick recently testified as an expert in *Jacobson v. Lee*, a case in which a federal district court permanently enjoined Florida's ballot ordering statute, which reserves the first position on the general election ballot for the last-elected governor's party. *Jacobson*, 2019 WL 6044035, at *12. The court found Dr. Krosnick's methods and analysis "reasonable, reliable, and credible." *Id*. at *5.

the first position on the ballot to . . . the incumbent's party.") (citation omitted); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violates equal protection); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming finding that "primacy effect confers an advantage in elections"); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (1975) (describing finding of position bias as "consistent with parallel findings rendered in similar litigation throughout the country"); *Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct. 1970) (finding "that there is a distinct advantage to the candidate whose name appears first on a ballot . . . appears to be so widespread and so universally accepted as to make it almost a matter of public knowledge" and holding system requiring incumbent at top of ballot unconstitutional), *aff'd*, 311 N.Y.S.2d 824 (1970).

The Arizona Supreme Court has likewise recognized position bias and its unconstitutional effects. In *Kautenberger v. Jackson*, 85 Ariz. 128, 131 (1958), the Court considered a challenge under the Arizona Constitution to an Arizona law that required candidates' names on machine ballots to be listed in alphabetical order during primary elections, even though the names were evenly rotated if paper ballots were used. The Court concluded that the Arizona Constitution required randomized name rotation due to the "well-known fact" that "where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage." *Id.* at 131. Indeed, the Court concluded "[n]o other reason exists for the statute [requiring rotation on paper ballots] except that otherwise there would result disadvantage to some candidates" and that without name rotation, candidates whose names are never listed first are "disadvantage[d]." *Id.*

This extensive body of precedent was supplemented just last Friday in *Jacobson v. Lee*, the most recent case to consider this issue. In a thorough, 74-page opinion and order, the court permanently enjoined Florida's ballot order statute, which required all candidates of the last-elected Governor's party be listed first on all general election ballots. *Jacobson*, 2019 WL 6044035. The difference, the court noted, between it and the

raft of cases listed above was that *Jacobson* represented "the first time" that a court had "a fully developed evidentiary record upon which to evaluate a ballot order claim." *Id*. at \*11. The defendants raised a "hodgepodge" of arguments in opposition, but most, the court noted, were designed to convince the court to avoid reaching the merits. *Id*. at \*2. When those arguments were disposed of, the court observed that, "the issues presented in this case are not novel"; in fact, "[i]n a jurisprudential sense, they are not even particularly challenging." *Id*. at \*4. In the end, the court easily found that the Constitution could not sustain the ballot order statute at issue, through which the state "put its thumb on the scale and award[ed] an electoral advantage to the party in power." *Id*. at \*1; *see also id*. at \*23.

All of these decisions are consistent with the U.S. Supreme Court's decision in *Mann v. Powell*, which summarily affirmed a preliminary injunction of an incumbent-first ballot order statute and upheld the lower court's directive that the state provide similarly-situated candidates an equal opportunity to be placed first on the ballot. *See Mann v. Powell*, 314 F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd,* 398 U.S. 955 (1970).[3]

**B.      Arizona's Ballot Order Statute**

Consistent with the Arizona Supreme Court's decision in *Kautenberger*, Arizona still mandates ballot order rotation in its primary elections. *See* A.R.S. § 16-464 (names of candidates shall be rotated so that "the name of each candidate shall appear substantially an equal number of times at the top, at the bottom" of ballots across the jurisdiction). It also mandates name rotation in general elections when candidates from the same party are running for the same office; in that instance, each candidate's name is rotated within their partisan peer group so that each candidate is listed first among their partisan fellows on a roughly equal number of ballots. A.R.S. § 16-502(H).

But Arizona law veers sharply away from the fairness principles that these other provisions embrace when it comes to general election ballots in races between candidates

---

[3] The lower court would later issue a permanent injunction. *Mann II*, 333 F. Supp. at 1267; *see also id*. (rejecting argument that "favoring certain candidates on the basis of 'incumbency' or 'seniority' is constitutionally permissible").

of different political parties. Instead of requiring rotation to neutralize the primacy effect, Arizona's Ballot Order Statute mandates that, in each county, the ballots must be ordered such that the advantage accrues to all of the candidates of a single political party. The Statute provides in relevant part that:

> The lists of the candidates of the several parties shall be arranged with the names of the parties in descending order according to the votes cast for governor for that county in the most recent general election for the office of governor, commencing with the left-hand column.

A.R.S. § 16-502(E). [4]

Thus, because Governor Ducey won the majority of Maricopa County's votes in the gubernatorial race in 2018, Republicans will be listed first in every partisan race on every ballot given to voters in that county in 2020. Maricopa County is not only the State's most populous county, it is home to over 2.3 million registered voters. *See* Arizona Sec'y of State, Voter Registration Totals July 2019, available at https://apps.azsos.gov/election/voterreg/2019-07-01.pdf. Every one of those voters who participates in the 2020 election will see Republican candidates listed first on their ballots. However, in races with more than one Republican candidate, each individual Republican candidate's name will be rotated to allow him or her an equal opportunity to appear first. *See* A.R.S. § 16-502(H). In every scenario, Republican candidates are always the sole beneficiaries of the statistically significant benefit that being listed first brings.

The story of Republican advantage is also evident when viewing historic voting patterns across Arizona as a whole. Although in each county the Ballot Order Statute directs that ballot order is determined using the county's own county-level gubernatorial

---

[4] Plaintiffs challenge only the ordering of candidates affiliated with political parties who participated in the last gubernatorial election ("major-party candidates"). Plaintiffs do not challenge the other portions of the Ballot Order Statute, including those that provide for a tiered ballot-ordering system for differently-situated political parties and candidates not affiliated with a recognized party. *See id.* ("In the case of political parties that did not have candidates on the ballot in the last general election, such parties shall be listed in alphabetical order below the parties that did have candidates on the ballot in the last general election. The names of all candidates nominated under § 16-341 shall be placed in a single column below that of the recognized parties.").

results, in practice there is little balancing effect. In the 2020 election, the Ballot Order Statute will require that 11 out of Arizona's 15 counties list Republicans first in every partisan race. Because of Arizona's unequal population distribution across counties, this accounts for 82% of Arizona's total population, *see* Frost Decl., Ex. 3. This is in keeping with historical trends: for 31 out of the last 39 years, anywhere from 61 to 99 percent of Arizona's voters have voted on general election ballots that have Republican candidates listed first for every single race. The sea of red in the graph below, which represents ballot order trends over the last 20 years (with county lines distorted to reflect the county's relative share of Arizona's voting population), displays a stark visual representation of Republican dominance under the Ballot Order Statute:



Rodden Rpt. at 15.

## C.     The Impact of Position Bias in Arizona Elections

When it comes to Arizona elections in particular, the evidence demonstrates that position bias has had—and, absent relief, will continue to have—a persistent, meaningful effect on election outcomes. Using data from 1980 to 2018, Dr. Jonathan Rodden, a

political scientist at Stanford University who was most recently qualified as an expert on the issue of position bias in *Jacobson*, estimates that being listed first on an Arizona ballot has historically averaged a 4.5 percentage-point bump for Democratic candidates. Rodden Rpt. at 22; *see also Jacobson*, 2019 WL 6044035, at *5 (finding Dr. Rodden's methods and analysis "reasonable, reliable, and credible"). For Republican candidates, the story is slightly more nuanced: where an incumbent appears on the ballot, the first-listed candidate can expect a 2.2 average percentage-point bump, which grows to 5.6 percentage points if the seat is open and no incumbent is running. Rodden Rpt. at 20. The ballot order effect grows more prominent in lesser-known down-ballot races, regardless of incumbency, where the position bias effect gives first-listed candidates a 5.5 percentage-point advantage. Rodden Rpt. at 23. In sum, in Arizona general elections conducted since the Ballot Order Statute went into effect, "candidates of the first-listed party receive higher vote shares than those of the second-listed party." Rodden Rpt. at 24.

### III.   ARGUMENT

Plaintiffs are entitled to the preliminary relief they seek because: (1) they are highly likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of relief; (3) the balance of the equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Jacobson*, 2019 WL 6044035, at *23 (listing same criteria for permanent injunction and finding all satisfied). The Court weighs these factors "on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). When the government is a party, the balance of equities and public interest prongs merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

**A.      Plaintiffs are highly likely to succeed on the merits**

Plaintiffs are highly likely to prevail on their claims that the Ballot Order Statute violates the First and Fourteenth Amendments to the U.S. Constitution. Its facially differential treatment of otherwise similarly-situated major-party candidates cannot be justified by any state interest and cannot be squared with equal protection guarantees. Further, the Ballot Order Statute unduly burdens the right to vote and impedes Plaintiffs' ability (and the ability of the candidates and voters with whom they associate) to achieve political success. The Secretary cannot identify so much as a legitimate state interest that could justify those injuries.

**1.      Legal Standard**

To determine whether an election law violates the First and Fourteenth Amendments, courts employ the *Anderson-Burdick* balancing test, which requires the court to "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Soltysik v. Padilla*, 910 F.3d 438, 443 (9th Cir. 2018); *Jacobson*, 2019 WL 6044035, at *22 (applying *Anderson-Burdick* test to Florida ballot order statute). This is a "flexible" sliding scale, where the rigorousness of scrutiny depends upon the extent to which the challenged law burdens voting rights. *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016). Thus, when a challenged law subjects voting rights to a "severe" restriction, it "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Even less severe burdens remain subject to balancing: "[h]owever slight" the burden on voting rights "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman*, 502 U.S. at 288-89).

## 2.     The Ballot Order Statute violates the First and Fourteenth Amendments

The Ballot Order Statute violates the First and Fourteenth Amendments on two independent grounds. First, it violates the Equal Protection Clause because it treats otherwise similarly-situated major-party candidates differently without sufficient justification. Second, the Statute burdens the fundamental right to vote by diluting the votes of Plaintiffs and their supporters. On both grounds, the Ballot Order Statute cannot survive unless the State can demonstrate that its interests in implementing its law outweigh the burden—a bar it cannot clear.

### a.     Disparate Treatment

Plaintiffs are highly likely to succeed on their claim that the Ballot Order Statute violates the Fourteenth Amendment's equal protection guarantee. The Equal Protection Clause requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another"). Here, the Ballot Order Statute treats similarly-situated major parties differently, thereby burdening Plaintiffs' equal protection and voting rights. On its face, the Statute gives preferential treatment to major-party candidates "in descending order according to the votes cast for governor for that county in the most recent general election for the office of governor," A.R.S. § 16-502(E), to the systemic and severe disadvantage of the major party candidates whose last gubernatorial candidate failed to win in that county.

For the nearly four decades the Ballot Order Statute has been in place, that statutory advantage has consistently accrued in favor of the Republican Party, its candidates, and the voters who support it—and to the detriment of the Democratic Party, its candidates, and its voters. Rodden Rpt. at 11-14; Martin Decl. ¶ 8; Barasky Decl. ¶¶ 6-10. Courts have repeatedly found that favoring one political party over another similarly-situated party clearly harms the disadvantaged party and its supporters. *See, e.g.*, *Nat. Law*

1  *Party of U.S. v. Fed. Elec. Comm'n*, 111 F. Supp. 2d 33, 44, 47 (D.D.C. 2000). Courts

2  have also consistently held that ballot order statutes that selectively grant preferential

3  treatment among otherwise similarly-situated parties violate the Equal Protection Clause.

4  *See McLain*, 637 F.2d at 1166 (invalidating statute that reserved first position on the ballot

5  for candidates whose party received most votes in last congressional election); *Jacobson*,

6  2019 WL 6044035, at *12 (applying *Anderson-Burdick* to invalidate statute that reserved

7  first position for candidates who shared their party with last-elected governor); *Mann I*,

8  314 F. Supp. at 679 (invalidating statute that reserved first position for incumbent

9  candidates under certain circumstances); *Graves v. McElderry*, 946 F. Supp. 1569 (W.D.

10 Okla. 1996) (using *Anderson-Burdick* to strike down law that mandated Democrats be

11 listed first on the ballot).

12      Courts have repeatedly found similar statutes unconstitutional even where the

13 primacy effect at issue was slight or even indeterminate. *See McLain*, 637 F.2d at 1159

14 (holding ballot order system unconstitutional where plaintiff candidate received only 1.5%

15 of the vote); *Graves*, 946 F. Supp. at 1579–81 (finding ballot order system

16 unconstitutional, based on "some measure of position bias exists in Oklahoma's General

17 Election"); *Akins*, 154 N.H. at 72 (striking down statute on finding "that the primacy

18 effect influences, even to a small degree, the outcome of New Hampshire elections");

19 *Gould*, 14 Cal. 3d at 668 (finding "significant," but unquantified, advantage accrued to

20 candidates even in high-visibility elections). But in this case, there is expert analysis from

21 Dr. Rodden, a widely respected scholar and political science professor at Stanford

22 University, finding that first-listed candidates in Arizona can expect to receive a

23 *significant* advantage from the Ballot Order Statute—anywhere from a 2.2 to 5.6

24 percentage-point bump just because they appeared first. *Supra* at 8. These findings echo

25 what other scholars have found across elections in various time frames, geographic

26 regions, and types of races. Krosnick Rpt. at 1-2; *supra* at 2-3.

27      Aside from the obvious fact that the Ballot Order Statute increases the likelihood

28 that Democratic candidates will not win their elections, the Statute's differential treatment

of otherwise similarly-situated candidates injures Plaintiffs in severe and meaningful ways. Plaintiffs have long suspected that position bias plays a role in elections, but have only recently come to understand the magnitude of the several-point advantage the Ballot Order Statute routinely grants to their political opponents. Martin Decl. ¶ 7; Barasky Decl. ¶ 5; Mecinas Decl. ¶ 5; C.V. Decl. ¶ 6; Serrano Decl. ¶ 5. An increased understanding of these effects has led Plaintiffs to the inexorable conclusion that they must divert resources away from other mission-critical activities to make up for votes lost as a result of position bias. Martin Decl. ¶¶ 14-17; Barasky Decl. ¶¶ 11-13; Mecinas Decl. ¶¶ 6-7; C.V. Decl. ¶ 6; Serrano Decl. ¶ 7. The additional resources are significant and come at the cost of other elections that may have been winnable had the candidate received more committee support. Martin Decl. ¶¶ 14-17; Barasky Decl. ¶¶ 11, 13.

Although the state-mandated advantage that the Ballot Order Statute confers on one similarly-situated party over another, over and over again, is reason alone to find that the Ballot Order Statute violates the Constitution, the degree to which it does so, and the substantial point advantage that the Statute conveys to the favored party, all but requires it. *Jacobson*, 2019 WL 6044035, at *4 (observing that the question of "whether the Constitution allows a state to put a thumb on the scale and award an electoral advantage to the party in power" by placing them first on the ballot is "simple": "[i]t does not"). Elections in Arizona are being decided on ever-closer margins as the state grows increasingly competitive—and where elections are close, even small numbers of votes make a difference. Plenty of elections have been and will continue to be decided well within the margins of advantage conferred by position bias, and the integrity of Arizona's elections demands that Arizona takes its thumb off the scale. Serrano Decl. ¶ 6; *see also Jacobson*, 2019 WL 6044035, at *17 (concluding that ballot order statute undermined integrity in Florida's elections by likely influencing election outcomes).

At bottom, the Ballot Order Statute treats otherwise similarly-situated parties differently, and that differential treatment imposes meaningfully weighty burdens on

1  Plaintiffs. Accordingly, the Statute cannot survive unless the State can show that its

2  interests outweigh the burdens imposed by its favoritism, and it cannot.

3  **b.   Right to Vote**

4  Plaintiffs are also highly likely to succeed on their claim that the Ballot Order

5  Statute unduly burdens Plaintiffs' right to vote. This claim, too, is evaluated under the

6  *Anderson-Burdick* standard.

7  The Ballot Order Statute unduly burdens the right to vote by diluting the votes of

8  Plaintiffs Brian Mecinas, C.V., Patti Serrano, the DNC membership, and the

9  constituencies of and voters who affiliate with the Democratic Party and support its

10  candidates. Mecinas, C.V., and Serrano all plan to vote for Democratic candidates in the

11  upcoming election and those votes will be diluted relative to Republican voters because

12  the Ballot Order Statute artificially inflates the Republican vote share. Mecinas Decl. ¶¶

13  4,6; C.V. Decl. ¶¶ 5-6; Serrano Decl. ¶¶ 4,7; Barasky Decl. ¶¶ 9-10. Other courts have

14  found that similar injuries inflict constitutional harms. *McLain*, 637 F.2d at 1167 (holding

15  that ballot order statute "burdens the fundamental right to vote possessed by supporters of

16  the last-listed candidates"); *Graves*, 946 F. Supp. at 1579 (finding ballot order statute's

17  vote-dilution effect injured voters); *see also Gould*, 14 Cal. 3d at 670 (1975) (finding

18  statute conferring top position to "a particular class of candidates inevitably dilutes the

19  weight of the vote of all those electors who cast their ballots for a candidate" not in that

20  class).

21  Both of these grounds impose a substantial burden warranting heightened scrutiny

22  to determine if the State has legitimate and relevant interests to justify its favoritism of a

23  single party and all of its candidates. *See Jacobson*, 2019 WL 6044035, at *23 (applying

24  heightened scrutiny in finding Florida's ballot ordering system unconstitutional); *see also*

25  *Gould*, 14 Cal. 3d at 670 (applying *Anderson-Burdick* and concluding that "close

26  scrutiny" standard of review, because ballot order system "impose[d] a very 'real and

27  appreciable impact' on the equality, fairness and integrity of the electoral process"). But

28  even if the Ballot Order Statute were reviewed under a less stringent standard, the

Secretary cannot possibly show that the burdens here are outweighed by any legitimate interest in placing first only those candidates who share their party association with the candidate who won the most votes in the county in the last gubernatorial election. *See Jacobson*, 2019 WL 6044035, at *22 (finding Florida's ballot order scheme "cannot satisfy even the extremely deferential rational-basis standard under the Anderson/Burdick framework"); *see also Graves*, 946 F. Supp. at 1569; *Holtzman*, 62 Misc. 2d at 1024; *Sangmeister*, 565 F.2d at 467.

### 3. Arizona has no interests sufficient to justify the burdens on Plaintiffs' rights.

The Ballot Order Statute can survive only if the Secretary can demonstrate that Arizona has sufficient state interests to justify the heavy burdens that the law imposes on Plaintiffs—a bar she cannot clear. *Soltysik v. Padilla*, 910 F.3d 438, 447-48 (9th Cir. 2018). Courts need not accept a state's justifications at face value, particularly where they are "speculative," otherwise it "would convert *Anderson-Burdick*'s means-end fit framework into ordinary rational-basis review wherever the burden a challenged regulation imposes is less than severe." *Id.* at 448–49 (citing *Pub. Integrity All.*, 836 F.3d at 1024-25).

To conclude that Arizona lacks an adequate interest to justify the Ballot Order Statute, the Court need look no further than the fact that Arizona employs an entirely different—and fairer—name rotation system both in primary elections and even in general elections when two candidates from the same party run for the same office. *See* A.R.S. § 16-464 (primary elections), A.R.S. § 16-502(H) (general elections where multiple candidates from the same party run for the same office). As the Arizona Supreme Court long ago recognized, the only plausible justification for rotating candidate names in the primary is to avoid the harms caused by position bias. *Kautenberger*, 85 Ariz. at 131; *see also Jacobson*, 2019 WL 6044035, at *18 (noting that the "majority of the States use nonpartisan ballot order schemes that would tend to minimize the impact of candidate

1   name order effects, presumably to control for this widely understood phenomenon"). That

2   goes double for Arizona's decision to rotate—within a race on the general election

3   ballot—the names of the candidates who share a political party, while the order of all the

4   other races on the same ballot, where candidates from different parties run only against

5   each other, remain fixed.

6          As a policy decision, this selective rotation is entirely inexplicable, except as a

7   concerted effort to avoid the unfairness that the State clearly recognizes a fixed ballot

8   order position imposes. And if that impact requires rotation to maintain fairness when

9   candidates from the same party face off, it must do the same when Arizona voters chose

10  among candidates of different parties for those who will ultimately represent them in

11  public office.

12         Arizona's current Ballot Order Statute is so unjustifiable that, regardless how

13  stringent the level of scrutiny, it cannot survive this constitutional challenge. *See*

14  *Jacobson*, 2019 WL 6044035, at *22 (concluding that Florida's ballot ordering law

15  "cannot satisfy even the extremely deferential rational-basis standard"); *Graves*, 946 F.

16  Supp. 1569 (finding no legitimate state interest in always placing one major political party

17  first on the ballot); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such

18  favoritism to a candidate merely on the basis of his having been successful at a prior

19  election"); *Sangmeister*, 565 F.2d at 467 (holding ballot order system did not further "any

20  substantial state interest"); *McLain*, 637 F.2d at 1168 (finding that state's interest in ballot

21  order statute could not survive even rational basis review). Because the State lacks a

22  legitimate interest in the Ballot Order Statute that can outweigh the burdens imposed by it,

23  Plaintiffs are highly likely to succeed on their claims.

24  **B.     Plaintiffs will suffer irreparable injury absent an injunction**

25         Unless the Ballot Order Statute is enjoined, Plaintiffs will suffer severe and

26  irreparable harm in the 2020 election. "It is well established that the deprivation of

27  constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*,

28  695 F.3d 990, 1002 (9th Cir. 2012) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

15

1    Unconstitutional ballot order schemes inflict irreparable injury. *See, e.g.*, *Jacobson*, 2019

2    WL 6044035, at *23; *Netsch*, 344 F. Supp. at 1280-81. "[O]nce the election occurs, there

3    can be no do-over and no redress." *League of Women Voters of N. Carolina v. N.*

4    *Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

5         Here, each election conducted under the Ballot Order Statute irreparably harms

6    Plaintiffs' constitutional rights. Plaintiffs face the dilution of their voting power and

7    ability to elect Democratic candidates. *See supra* at 13. The DNC and the DSCC are

8    forced to divert resources away from other mission-critical activities to make up for votes

9    lost solely because the Ballot Order Statute grants a several-point advantage to the

10   political opponents of the candidates they support. Barasky Decl. ¶¶ 11-13. Together, all

11   of the Plaintiffs are harmed by the simple fact that the Ballot Order Statute increases the

12   likelihood that Democratic candidates—for both statewide offices such as governor and

13   attorney general down to local offices such as state legislators—will not ultimately win

14   the offices for which they run in Arizona. *Id*. ¶¶ 9-10. Because these harms—which strike

15   at the very heart of the functioning of a fair and democratic society—cannot be remedied

16   post-election, they are certain and irreparable. *Id*. ¶ 12.

17   **C.    The balance of the equities and the public interest favor an injunction**

18        The balance of the equities and the public interest also strongly favor the issuance

19   of the requested injunction. "It is always in the public interest to prevent the violation of a

20   party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quotation marks and citation

21   omitted). If the 2020 general election is conducted under the Ballot Order Statute,

22   Plaintiffs' right to vote and right to equal treatment are severely burdened. *Supra* at 13-14.

23   The Secretary, in contrast, is not harmed by an injunction. She "can derive no legally

24   cognizable benefit" from enforcing an unconstitutional law. *Sanders Cty. Republican*

25   *Cent. Comm. v. Bullock*, 698 F.3d 741, 749 (9th Cir. 2012). Nor can the Secretary

26   plausibly argue that an injunction would impose undue administrative burdens, given that

27   Arizona already rotates candidate names precinct-by-precinct in both primary elections

28   and in general elections among partisan fellows running for the same office. A.R.S. § 16-

464; A.R.S. § 16-502(H). Simply put, the Ballot Order Statute directly interferes with Arizonans' ability to elect candidates on an equal playing field, and the balance of the equities and the public interest tip sharply in favor of correcting the unconstitutional favoritism.

## IV.   CONCLUSION

For each of these reasons, Plaintiffs respectfully request that the Court enter an order directing the Secretary to enjoin enforcement of the Ballot Order Statute and to direct the counties to implement a non-discriminatory name rotation system that gives similarly-situated major-party candidates an equal opportunity to be placed first on the ballot.

Dated:  November 18, 2019

*s/ Sarah R. Gonski*
Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias (WDC# 442007)*
Elisabeth C. Frost (WDC# 1007632)*
John M. Geise (WDC# 1032700)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WDC# 42612)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
AKhanna@perkinscoie.com

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on November 18, 2019, I electronically transmitted the

3  attached document to the Clerk's Office using the ECF System for filing and transmittal

4  of a Notice of Electronic Filing to the ECF registrants.

5

6                        *s/ Daniel R. Graziano*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28