Sarah R. Gonski (Bar No. 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias (WDC Bar No. 442007)*
Elisabeth C. Frost (WDC Bar No. 1007632)*
John M. Geise (WDC Bar No. 1032700)*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
AKhanna@perkinscoie.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Mecinas, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as the Arizona Secretary of State,<br><br>Defendant. | No. 19-cv-05547-DJH<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR EXTENSION** |

## I. INTRODUCTION

Certain patterns emerge when one reviews voting rights cases brought against the State of Arizona. Routinely, the State will argue that the Plaintiffs lack standing, or there is no federal claim to speak of. It is always too late or too early, there is always too much evidence for the State to respond to in a timely fashion, or not enough to support Plaintiffs' claims. And increasingly, Arizona's Secretaries of State have sought unjustifiably long delays in responding to even straightforward motions, even if doing so raises the serious risk that justice is forestalled, irreparably. Plaintiffs filed this case well in advance of the upcoming November 2020 election and promptly sought a preliminary injunction to ensure that the resolution of this case is not effectively determined by scheduling issues. For the reasons that follow, the Court should deny Defendant Arizona Secretary of State Katie Hobbs' request for an expansive 90-day extension to file her response to the Plaintiffs' motion. In addition, Secretary Hobbs has thus far declined to provide Plaintiffs with either a date certain by which she would require a decision from the Court to effectuate a meaningful remedy, or a commitment that she will not later attempt to avoid implementing a remedy because of her own delay in responding to the pending preliminary injunction motion. In light of that refusal, as well as the fact that this particular case presents straightforward constitutional questions, Plaintiffs submit that an extension of no longer than one month from the date of this filing is appropriate. In the alternative, Plaintiffs would request that the Court expedite this matter to a decision on the merits, issuing a schedule that would ensure a final judgment by the end of June.

## II. ARGUMENT

Voting rights cases are not like happy families: they are not all alike. While some present highly nuanced, difficult questions of first impression, this case is not among them. To the contrary, the matter presently before the Court presents a question that a fellow federal district court recently described as "not novel" or "even particularly challenging," *Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, 2019 WL 6044035, at *4 (N.D. Fla. Nov. 15, 2019) (emphasis added). The specific question that the Court must answer is whether

Arizona's ballot order statute, A.R.S. § 16-502(E), which mandates that the first position in any partisan race on an Arizona general election ballot, is reserved for the candidates of a specific political party unconstitutionally skews the State's elections. Although the Secretary selectively cites highly distinguishable cases in an attempt to portray the scholarship as being in some doubt, decades of research now overwhelmingly proves that the first-listed candidate enjoys a statistically significant advantage in elections. *See, e.g.*, *Jacobson*, 2019 WL 6044035, at *12.

Consistent with this, courts have repeatedly found that ballot order systems that inherently or arbitrarily favor a certain category of candidates (e.g., based on partisan affiliation, incumbency status, friendship with elections officials, etc.) are unconstitutional. *See* Pls.' Prelim. Inj. Mot. at 3-5 (Dkt. 14). The Arizona Supreme Court itself is among them, finding in *Kautenberger v. Jackson*, 85 Ariz. 128, 131 (1958), that a ballot order statute that required that candidates be listed alphabetically violated the State Constitution because it created a distinct disadvantage for candidates whose names appeared later in the alphabet. The U.S. Supreme Court, too, in its only opportunity to consider the question, summarily affirmed a preliminary injunction of a ballot order statute that favored one type of candidates by putting them first on the ballot (there, incumbents) and *affirmatively required* that the state implement a ballot order system that provided similarly-situated candidates an equal opportunity to be listed first on the ballot. *See Mann v. Powell*, 314 F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

Nevertheless, rather than pursuing a quick resolution of this serious (if straightforward) issue for the sake of Arizona's voters, Secretary Hobbs instead moves to delay the Court's consideration of the merits by seeking a remarkably prolonged extension of time to file her response to the preliminary injunction motion—from the standard 14 days under the Local Rules to a full 104 days from the time Plaintiffs filed their brief. To be clear, Plaintiffs do not object to a reasonable extension of time for Secretary Hobbs to

respond, but this is not it.[1] Plaintiffs' opposition is grounded in recent experience with the Arizona Secretary of State specifically. In *DNC v. Hobbs*, then-Secretary Michelle Reagan made a similar claim that she could not respond to a motion for preliminary injunction without a ten-week extension and a live evidentiary hearing. The court granted the extension over the plaintiffs' strong objections and, in the end, due in large part to the delays caused by Secretary Reagan, the motion was not ruled upon until four weeks before the election. On the Friday before the election, the *en banc* Ninth Circuit held that the challenged voting law was likely unconstitutional and issued an emergency injunction. But it was an empty victory for the plaintiffs. Too much time had elapsed, and consistent with long-standing precedent known as the "*Purcell* doctrine" (which takes its name from *Purcell v. Gonzalez*, 549 U.S. 1 (2006), a case involving yet another Arizona elections official, former Maricopa County Recorder Helen Purcell), under which federal courts are strongly disinclined to change election laws and regulations on the eve of an election, the Supreme Court stayed that injunction.

Because of the *Purcell* doctrine, delay is a tactic routinely (and often successfully) used by defendants in voting rights cases to avoid a timely review of the merits. The prolonged extension that Secretary Hobbs requests significantly raises the risk that, even if this Court concludes (as has been the near-universal conclusion of courts that have previously reviewed similar statutes) that Arizona's ballot order statute is unconstitutional, there will not be adequate time to implement a meaningful remedy in advance of the November 2020 election. This likelihood is heightened by the fact that Secretary Hobbs has refused to provide to Plaintiffs' counsel a date by which, in her view, it would be too late to implement a fairer approach to ballot order—such as the rotational system Arizona

---

[1] In fact, upon filing the motion for a preliminary injunction, the undersigned affirmatively reached out to counsel for Secretary Hobbs and advised them that Plaintiffs would be willing to discuss an agreed-to extension of time for the Secretary to respond. The Secretary's counsel waited until the Wednesday right before Thanksgiving, however, to advise that Secretary Hobbs would be seeking a full additional 90 days to respond. Even then, the Secretary's counsel was advised that Plaintiffs were amenable to discussing a more reasonable extension after the Thanksgiving holiday, but Secretary Hobbs persisted in filing the motion for an extension to which Plaintiffs now respond.

already uses in primary elections and for candidates of the same party in general elections. *See* A.R.S. §§16-464, 16-502(H).

The unusual circumstances of *DNC v. Hobbs* aside, state defendants are often required to respond to expedited motions for relief on short timelines in voting rights cases. Secretary Hobbs' objections here appear mainly based on the fact that Plaintiffs submitted two expert reports in support of their motion, but she fails to explain why that makes this a unique case in which she should be permitted more than three months to prepare and file a response. In fact, state defendants are often required to submit responses on short timelines even where multiple expert reports are in issue. *See, e.g., N.C. State Conf. of the NAACP, et al. v. McCrory, et al.*, No. 13-658, ECF Nos. 75, 110-2 (setting expert response deadlines in connection with motion for preliminary injunction at two weeks where 11 expert reports were filed); *Ohio Democratic Party, et al. v. Husted, et al.*, No. 15-1802, ECF Nos. 32, 78 (setting expert response deadline at four weeks for trial on the merits where three initial expert reports were filed); *One Wisc. Inst., Inc. et al. v. Nichol, et al.*, No. 15-324, ECF Nos. 65, 184-1 (expert report response deadline set at four weeks for trial on the merits where five initial expert reports were filed); *Lee, et al. v. Va. State Bd. of Elections, et al.*, No. 15-357, ECF Nos. 75, 155-1 (setting expert response deadline at three weeks for trial on the merits where five initial expert reports were filed). Given that motions for preliminary injunction are meant to be decided on a faster timeline than a complete trial and are accordingly "customarily granted . . . on evidence that is less complete than in a trial on the merits," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), expedited timelines make sense.[2]

---

[2] Although Secretary Hobbs complains of the difficulties of providing her experts with the relevant data, both of Plaintiffs' expert reports rely on publicly available data. *See* Doc. 15-1, Expert Rpt. of Jonathan Rodden (analyzing Arizona historic election data for signs of primacy effect); *see also* Doc. 15-2, Expert Rpt. of Jon Krosnick (surveying publicly available research on primacy effect). Nonetheless, when Secretary Hobbs requested on November 25 that Plaintiffs produce expert data, Plaintiffs promptly complied just hours later.

The Secretary relies upon *New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282 (S.D.N.Y. 1994), and *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 695 (6th Cir. 2015), to argue that the existence and strength of the ballot order effect is a "fact-intensive issue," Mot. at 3, 4, but both involved plaintiffs who presented *not a shred of* statistical evidence supporting their claims. *See Hargett*, 2016 WL 4379150, at *3, *38-40 (rejecting equal protection claim where plaintiff "presented no competent statistical evidence or expert testimony demonstrating that a party's position on the ballot affects its performance in an election, much less the extent of any such effects"); *see also Hargett*, 861 F. Supp. at 287 (rejecting claim where plaintiff had "tendered no empirical evidence in support of its claims"). Neither case fairly can be read to stand for the proposition that ballot order effect is in dispute generally; in each, the plaintiffs simply failed to carry their burden of proof. The Secretary's further reliance on a single 13-year old law review article cautioning that courts should hesitate to draw conclusions on ballot order effects until research had developed showing the effect across "different electoral contexts," Mot. at 3, ignores the fact that in the intervening 13 years, *social science has done precisely that*. Thus, as reflected in Plaintiffs' expert reports, there is now ample empirical support showing that the ballot order effect has a meaningful impact on Arizona elections, and the overwhelming consensus of the academy is that the ballot order effect is largely undisputed and undisputable. *See generally* Doc. 15-1, Rodden Rpt. (presenting statistical evidence); *see also* Doc. 15-2, Krosnick Rpt. (surveying academic literature).[3]

As for what might be a reasonable extension of time for Secretary Hobbs to file her response to Plaintiffs' preliminary injunction motion, by declining to commit to a date by which she would require a decision to implement meaningful relief in advance of the

---

[3] This also helps explain why Plaintiffs "waited" to bring this case until now, *see* Mot. at 2, and illustrates the familiar Goldilocks problem that voting rights plaintiffs so often face. If they bring a case too early, before the empirical evidence overwhelmingly confirms what they have observed and suspect, then the state argues they cannot support their claims sufficiently. If they wait to bring it, they are accused of sitting on their rights. Here, Plaintiffs brought this case well in advance of the November 2020 election, with sufficient time for the Court to carefully consider it—that is, unless review of the merits is effectively delayed until it once again becomes too late.

November election, Secretary Hobbs has put Plaintiffs in an impossible position. Plaintiffs must decide whether to agree to the prolonged (and virtually unprecedented) 90-day extension of time that Secretary Hobbs requests to respond to Plaintiffs' motion for *preliminary* relief, and run the serious and significant risk that the delay will result in the Court deciding the motion too late to implement any meaningful relief, or press forward on a schedule that may be more aggressive than necessary. Plaintiffs have no interest in imposing excessive or unnecessary burdens on the Secretary's counsel, but without Secretary Hobbs' agreement that she will not later turn around and argue that the delay itself should be reason to deny relief in November, Plaintiffs must act expeditiously to protect the rights of not just the Plaintiffs themselves, but of millions of Arizona voters who deserve to cast their ballots in a fair system—not one where the State puts its thumb on the scale in favor of candidates from a particular political party. In light of the lack of any commitment on the Secretary's behalf to not use the delay against Plaintiffs, and given the overwhelming precedent that has found similar statutes unconstitutional, Plaintiffs submit that an extension of no more than a month from the date of this filing is appropriate.

Plaintiffs also object to Secretary Hobbs' unsupported contention that a live evidentiary hearing is necessary to resolve Plaintiffs' motion for a preliminary injunction. Notably, she fails to cite any support that concludes that such a hearing must take place before this Court can issue preliminary relief. This is not surprising, given the very nature of a request for preliminary relief. *See, e.g.*, *Ross-Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir. 1953) (describing "one of the purposes of a preliminary injunction" as "to give speedy relief from irreparable injury" and rejecting notion that court must hold an evidentiary hearing because such a requirement would "defeat" this purpose).

In sum, the Court should not permit Arizona once again to forestall meaningful relief to plaintiffs in a voting rights case. The later that Plaintiffs' motion is decided, the more likely that Secretary Hobbs will prevail by default, even if the Court finds that the ballot order statute violates fundamental constitutional guarantees, causing irreparable injury to Plaintiffs and voters across Arizona. *See, e.g.*, *Melendres v. Arpaio,* 695 F.3d 990, 1002

(9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress."). Arizona voters deserve better.

### III. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Secretary Hobbs' motion for an extension and permit her one month from the date of this filing to file her response to Plaintiffs' motion for a preliminary injunction.

In the alternative, if the Court is inclined to agree with the Secretary that an evidentiary hearing or a prolonged extension is justified, Plaintiffs would request that the Court convert the preliminary injunction proceedings into an expedited trial on the merits and set a schedule that permits the Court to issue a final decision on the merits no later than June of 2020. Further, Plaintiffs request that the Court direct the Secretary to promptly notify the Court and Plaintiffs of the deadline by which the Secretary believes the Court must issue any injunction, should Plaintiffs prevail, in order for the Secretary to implement a meaningful remedy.

Dated: December 3, 2019

    s/ Elisabeth C. Frost
Sarah R. Gonski
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

| | |
|---|---|
| 1 | Abha Khanna* |
| 2 | **PERKINS COIE LLP**<br>1201 Third Avenue, Suite 4900 |
| 3 | Seattle, Washington 98101-3099<br>Telephone: (206) 359-8000 |
| 4 | Facsimile: (206) 359-9000<br>AKhanna@perkinscoie.com |
| 5 | *Admitted Pro Hac Vice* |
| 6 | *Attorneys for Plaintiffs* |

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on December 3, 2019, I electronically transmitted the attached |
| 3 | document to the Clerk's Office using the ECF System for filing and transmittal of a Notice |
| 4 | of Electronic Filing to the ECF registrants. |
| 5 | |
| 6 |                                                 s/ D. Freouf |