Sarah R. Gonski (Bar No. 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  (602) 351-8000
Facsimile:   (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias (WDC Bar No. 442007)*
Elisabeth C. Frost (WDC Bar No. 1007632)*
John M. Geise (WDC Bar No. 1032700)*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone:  (202) 654-6200
Facsimile:   (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
AKhanna@perkinscoie.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Mecinas, *et al.*, | No. 19-cv-05547-PHX-DJH |
| Plaintiffs, | **JOINT PROPOSED SCHEDULING REPORT** |
| v. | |
| Katie Hobbs, in her official capacity as the Arizona Secretary of State, | |
| Defendant. | |

1      In response to the Court's December 5 Order (Doc. 20), all parties jointly submit this

2  proposed scheduling order.

3      **Plaintiffs' Position**:

4      This is a case about the constitutionality of A.R.S. § 16-502(E) (the "Ballot Order

5  Statute"), an Arizona law that grants certain candidates the preferred first-listed position on

6  the ballot. Because of a well-documented phenomenon known as "position bias," the

7  candidate whose name is listed first has a meaningful electoral advantage over later-listed

8  candidates. Whether or not Arizona's ballot ordering scheme offends the First and

9  Fourteenth Amendments is a relatively straightforward question that depends primarily on

10  the law and publicly available data and is amenable to preliminary injunctive relief.

11  Plaintiffs' overriding concern is that injunctive relief is available in time to create a new,

12  constitutional ballot ordering scheme for the November 3, 2020 general election. Plaintiffs

13  remain flexible and willing to work with the Court and the Secretary to arrive at a process

14  and timeline that ensures that preventable procedural delays do not interfere with their right

15  to obtain meaningful relief from an unconstitutional election law.

16      Plaintiffs believe that any scheduling order issued should permit the Court to issue a

17  decision by April of 2020. Based on conversations with the Secretary's counsel, Plaintiffs

18  understand that Maricopa County typically programs and re-certifies ballot tabulation

19  software during the months of June and July. Accordingly, Plaintiffs understand the

20  Secretary's position to be that any remedial ballot ordering scheme must be ready to

21  implement by that time frame. Plaintiffs note that they have not had an opportunity to test

22  these assumptions, and accordingly reserve the right to later dispute the Secretary's position

23  that an injunction after June is too late to implement. Nevertheless, to foreclose later

24  arguments by the Secretary that a decision has come too late to be effectuated, Plaintiffs

25  believe that all parties and the Court should set scheduling deadlines using the working

26  assumption that a remedy must be ready to implement by June 2020.

27      Of course, it takes at least some time after an order is issued to implement a remedy.

28  Plaintiffs believe that the Court should be prepared to issue an order approximately eight

weeks before June to allow time for various contingencies, including: (1) any technical adjustments that need to be made to the elections hardware or software to effectuate relief, (2) any delays in re-certification, (3) communication and actual implementation of the remedy, (4) briefing and resolution of any motions to stay the ruling pending appeal, (5) resolution of an appellate process, if any. Plaintiffs propose a minimum eight-week window between this Court's resolution of Plaintiffs' motion for preliminary injunction and the potential implementation of a remedy in order to avoid disputes over whether it is too late to implement a remedy in time for the November 2020 general election.[1]

In short, as both Plaintiffs and the Secretary well know, time is often needed after a district court's ruling to allow the legal and administrative process to play itself out fully, and Plaintiffs believe it is crucial to build in at least an eight-week lead time to allow for that process and to foreclose later disputes about whether it is too late to implement injunctive relief in favor of Plaintiffs in time for the 2020 election. Accordingly, Plaintiffs propose the following timeline:

- Defendant's Response to Motion for Preliminary Injunction Due: January 20, 2020.
- Plaintiffs' Reply to Motion for Preliminary Injunction Due: February 3, 2020.
- Oral Argument, Live Evidentiary Hearing, or Expedited Trial on the Merits: February or March 2020.[2]
- Decision: No later than April 2020.

---

[1] Additionally, the Secretary's counsel has indicated that the Secretary may take the position that only the State Legislature, not this Court, can craft a remedy to Arizona's ballot ordering scheme. Plaintiffs disagree with this position. Federal courts routinely craft interim relief from unconstitutional election laws, which apply until and unless the legislature replaces court-ordered relief with other constitutional remedies as it sees fit. If the Court is inclined to agree, however, that the Legislature should be given time to craft a remedy, then even more time will be necessary to ensure that a decision is final in time to implement any remedy.

[2] Plaintiffs do not believe that a live evidentiary hearing is strictly necessary, but if the Court feels that live testimony would be helpful, Plaintiffs are willing to move forward with an evidentiary hearing.

1    Plaintiffs' objection to the Secretary's alternate proposed timeline is based solely on

2    the assumption that it affords too little time for the Court to be able to issue a ruling by

3    April. If, however, the Court is comfortable that the Secretary's preferred schedule permits

4    it to issue a decision by April, Plaintiffs do not object.

5            **Defendants' Preliminary Statement**:

6            The Secretary disputes Plaintiffs' claims, which challenge the constitutionality of

7    A.R.S. § 16–502(E).   The statute—which has existed for decades—is presumed to be

8    constitutional, and Plaintiffs bear the burden of proving otherwise.

9            In the interests of efficiency and expediency, the Secretary requests that this Court

10   resolve Plaintiffs' Motion for Preliminary Injunction before scheduling any trial deadlines.

11   The Secretary agrees with Plaintiffs that an evidentiary hearing with live expert witnesses

12   is not absolutely necessary.   However, the Secretary reiterates her request for a 90-day

13   extension of the deadline to file a response to Plaintiffs' Motion for Preliminary Injunction,

14   therefore extending the response deadline to March 2, 2020. The Secretary intends to retain

15   one, or possibly two, experts for the purpose of rebutting Plaintiffs' two expert reports that

16   Plaintiffs submitted with the Motion for Preliminary Injunction.   The Secretary has

17   researched and inquired with nearly a dozen potential experts who have relevant expertise

18   and experience, but has not yet retained an expert.   The process of obtaining an expert has

19   been delayed because it is a busy time for professors, with the semester finals and the

20   upcoming holidays.   Given the short timeframe Plaintiffs' propose, potential experts

21   reasonably are not willing to give up their holidays to work on this matter.   The Secretary

22   believes that an extension of the deadline to March 2, 2020 will give her a fair opportunity

23   to retain the one or two experts she needs to properly defend the fifty-year-old Arizona law.

24   The Secretary proposes that Plaintiffs' Reply brief would then be due on March 16, 2020,

25   and an oral argument could be held in early April, permitting this Court to rule on the motion

26   by June.

27           Regarding Plaintiffs' footnote 1 above, the Secretary has simply noted that if

28   Plaintiffs prevail on their Motion for Preliminary Injunction, this Court may wish, in its

discretion, to first give the Legislature a reasonable amount of time to cure any deficiency in the ballot-order statute in the first instance. *See, e.g., Rep. Party of Ark. v. Faulkner County, Ark.*, 49 F.3d 1289, 1291, 1301 (8th Cir. 1995) (declaring Arkansas election statutes unconstitutional and stating, "[c]ognizant of our role as a federal court, we do not purport to advise Arkansas on the best means of rendering constitutional its election code: that decision rests with the sound judgment of the Arkansas legislature").

The parties respond to the questions set forth in the Court's Order as follows:

**1**. **Each party's position on the need for discovery, including:**

    **a. The extent, nature, and scope of discovery anticipated by the parties;**

    **b. Whether the parties anticipate expert witness testimony, the nature of that testimony, and the number of expert witnesses contemplated;**

    **c. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;**

    **d. Whether any depositions are necessary, and if so, the number of hours permitted for each deposition, unless modified by agreement of the parties.** *See* **Fed. R. Civ. P. 30(d)(1).**

    **e. A proposed timeline for any discovery mentioned above.**

**Plaintiffs' Position:**

Plaintiffs believe that discovery may commence, but need not be completed, before oral argument or a live evidentiary hearing on Plaintiffs' motion for preliminary injunction.

To show the existence and magnitude of position bias in Arizona elections, Plaintiffs submitted two expert reports along with their Motion for Preliminary Injunction (Doc. 14). This evidence is consistent with decades of research, and Plaintiffs do not believe that those conclusions are reasonably subject to dispute. Nonetheless, Plaintiffs understand that the Secretary intends to include at least one expert report with her response, to which Plaintiffs reserve the right to submit reply reports.[3] At this time, Plaintiffs do not anticipate

---

[3] It is Plaintiffs' understanding that the Secretary is planning to take the position

1    introducing the testimony of any additional experts. During the course of this litigation,

2    Plaintiffs anticipate that each party will plan to depose the experts offered by the other.

3          Plaintiffs believe that their motion can be resolved with little to no additional fact

4    discovery. Whether position bias influences Arizona elections is a factual question

5    resolvable on expert analysis of publicly available historic election data. Indeed, numerous

6    other courts to consider this issue have based their opinions almost entirely on such expert

7    analysis, including analysis not even focused on the state at issue. *See, e.g.*, *McLain v.*

8    *Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980) (affirming district court that relied principally

9    on an affidavit of a statistician who reviewed various studies but conducted no analyses of

10   North Dakota elections specifically to find advantage to first position); *Sangmeister v.*

11   *Woodard*, 565 F.2d 460, 463, 467 (7th Cir. 1977) (affirming holding that ballot order system

12   was unconstitutional after district court issued preliminary injunction based principally on

13   expert testimony at a one-day hearing "to the effect that there was a favorable effect created

14   by first or top ballot placement"); *Graves. v. McElderry*, 946 F. Supp. 1569, 1575-76 (W.D.

15   Okla. 1996) (resolving case on summary judgment and noting that at the hearing the focus

16   was on expert opinion on position bias in Oklahoma elections, with court crediting

17   Plaintiffs' expert's opinion in part because defendant's expert's "published conclusion that

18   position bias is absent in partisan elections has been much criticized by other political

19   science experts around the country").

20         Aside from the ballot order effect itself, the only other main factual issue in this case

21   is the existence and weight of the state's interests in implementing the particular ballot order

22   scheme at issue. Plaintiffs believe that there is no legitimate justification behind Arizona's

23   _____

24   that Plaintiffs are not entitled to submit reply expert reports along with their reply brief.
     Of course, Plaintiffs have the burden of proof, and should be afforded the opportunity to
25   respond to any criticisms made by the Secretary's experts. In other voting rights cases,
     plaintiffs routinely submit reply expert reports. *See, e.g.*, *Feldman v. Arizona Sec'y of*
26   *State's Office*, No. 2:16-cv-01065-DLR, Doc. 265 (D. Ariz. 2017) (including "Plaintiffs'
     rebuttal expert disclosures" in scheduling order); *Jacobson v. Lee*, No. 4:18-cv-262-
27   MW/CAS, Doc. 88 (N.D. Fla. Dec. 21, 2018) (including "Plaintiffs' [expert] rebuttal
     reports" in scheduling order). Plaintiffs note that they would submit reply expert reports
28   on the same day that they submit their reply brief, so no delay would result.

1   disparate treatment of otherwise similarly-situated candidates, and that Arizona can provide

2   none. To the extent that the Secretary, however, intends to dispute the ability to put a remedy

3   in place or insist upon the specific ordering scheme at issue, Plaintiffs reserve their right to

4   conduct limited discovery on those issues.

5        At this time, Plaintiffs do not believe that any changes are necessary to the discovery

6   limitations imposed by the Federal Rules of Civil Procedure, including the number of hours

7   for each deposition.

8        **Defendant's Position:**

9        The Secretary intends to retain one, or possibly two, experts for the purpose of

10  rebutting Plaintiffs' experts' reports.  The Secretary objects to Plaintiffs' request to submit

11  "reply reports" to the Secretary's rebuttal expert reports.  Plaintiffs' proposal would deviate

12  from the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (establishing

13  deadlines for the disclosure of expert rebuttal evidence "on the same subject matter

14  identified by another party").  Although Plaintiffs contend reply reports are necessary

15  because they carry the burden of proof, this is not a sufficient justification to expand the

16  rule's discovery limitations.  And permitting Plaintiffs to submit reply reports would only

17  prolong the litigation on Plaintiffs' Motion for Preliminary Injunction.  Because the

18  Plaintiffs have already submitted their expert reports, the Secretary requests a deadline of

19  March 2, 2020, for submitting her rebuttal expert reports—the same deadline the Secretary

20  proposes for filing a response to Plaintiffs' Motion for Preliminary Injunction.  This

21  timeline would allow the Secretary's experts to have sufficient time to analyze Plaintiffs'

22  expert reports and write any rebuttal report(s).  Defendants propose that any discovery be

23  delayed until after the preliminary injunction hearing.  Defendants agree that the fact

24  discovery in this matter is limited.  However, Defendants anticipate limited discovery

25  involving the burden Plaintiffs allegedly suffer due to the Ballot Order Statute, including

26  depositions of three hours or less.  Defendants may submit an additional expert report that

27  is not a rebuttal report and expect that all disclosed experts will be deposed. Defendants do

28

not believe it is necessary to change any discovery limitations imposed by the Federal Rules of Civil Procedure.

**2.      If the case does involve questions of fact, whether the parties can stipulate to any or all facts.**

All parties agree to work together to reach reasonable factual stipulations.

**3.      If discovery is not necessary, a statement that the case is to be solely decided on the law.**

**Plaintiffs' Position**: The Ballot Order Statute violates the First and Fourteenth Amendments. The touchstones of the constitutional violation are that the state grants preferential treatment to the candidates and voters affiliated with one major political party at the expense of the other major political parties, and that the state has no legitimate interest in advantaging certain candidates and voters in that manner. The Court can evaluate these matters based on facts not reasonably in dispute.

As an initial matter, it is beyond dispute that the first position on the ballot yields an electoral advantage. Decades of social science research have concluded that the first-listed candidate received a meaningful electoral benefit from being listed first. *See generally* Krosnick Rpt. (Doc. 15-2) (collecting research); *see also Jacobson*, 2019 WL 6044035 at *12 (N.D. Fla. Nov. 15, 2019) (summarizing research).

The answer to whether the state grants preferential treatment to one major party over the others in distributing the advantages (and disadvantages) of the ballot order effect is decidedly yes. No factual discovery can alter the basic fact that Arizona grants the first position on each ballot for every partisan race to the candidate who shares a political party with the gubernatorial candidate who won the most votes in that county during the last election. Similarly, further factual development cannot change the fact that the Ballot Order Statute has consistently favored candidates affiliated with the Republican Party: for 31 out of the last 39 years, anywhere from 61 to 99 percent of Arizona's voters have voted on general election ballots that have Republican candidates listed first for every single race. Consistent with historical patterns, in the 2020 election 82% of Arizona's total population

1    will vote on ballots that display Republican candidates listed first for every single partisan
2    race. Pls.' Mot. for Prelim. Inj. (Doc. 14) at 6-7. These facts depend on Arizona's own
3    official election and population record, are not reasonably in dispute, and are proper subjects
4    of either a stipulation or judicial notice.

5         Similarly, no amount of factual discovery can change the fact that Arizona cannot
6    justify its preferential treatment on the basis of any legitimate state interest. The criteria
7    Arizona uses to differentiate between candidates is their shared partisan affiliation with a
8    candidate—who may or may not have ultimately been the winning candidate—who ran in
9    a different race in a different year. In similar circumstances, courts have had little trouble
10   concluding that the ballot order scheme is unconstitutional. *See Jacobson*, 2019 WL
11   6044035, at *23-*24 (holding statute which placed candidates of governor's party first on
12   ballot unconstitutional); *Graves*, 946 F. Supp. at 1581-82 (holding statute always placing
13   Democrats first unconstitutional). Further, the Secretary can cure the constitutional
14   violation in a fairly straightforward manner: by implementing a fair ordering system that
15   neutralizes position bias by rotating major party candidates' names. That she is capable of
16   doing so is demonstrated by the rotational systems Arizona already implements in primary
17   elections, presidential preference elections, and in general elections under certain
18   circumstances. A.R.S. § 16-502(E), A.R.S. § 16-245(B), A.R.S. § 16-464.

19        Extensive factual development is thus not necessary for the Court to conclude that
20   the Ballot Order Statute meaningfully disadvantages certain candidates and voters, is not
21   justified by any legitimate state interest, and is readily fixable.

22        **Defendant's Position:**

23        The Secretary disagrees that this case can be solely decided on the law.  As discussed
24   in the Secretary's motion for an extension of time and her reply in support of the motion,
25   Plaintiffs' claims are intertwined with disputed factual issues that require expert analyses
26   on both sides.

27        **4.    A statement of whether any party expects to add additional parties to the**
28   **case or otherwise to amend pleadings in this matter.**

1  **Plaintiffs' Position**: At this time, Plaintiffs do not expect to add additional parties
2  to the case or amend the pleadings. Plaintiffs understand that the Secretary may move to
3  dismiss. If the Court grants the motion, Plaintiffs reserve their right to amend their pleading
4  to remedy any curable defects.

5  **Defendant's Position:**

6  The Secretary reserves her right to file a motion to dismiss and requests that the
7  motion be fully briefed prior to oral argument on Plaintiffs' Motion for Preliminary
8  Injunction, which would permit the Court to hear oral argument on both parties' motions if
9  the Court wished.  As stated above, the Secretary requests that oral argument on the
10  preliminary injunction motion be set in early April 2020.  The Secretary's motion to dismiss
11  or answer to Plaintiffs' Amended Complaint is currently due on January 2, sixty days after
12  the service date on November 1. The Secretary does not request an extension of time to file
13  a Motion to Dismiss.

14  **5.**    **The prospects for settlement, including any request of the Court for**
15  **assistance in settlement efforts, including referral to a United States Magistrate Judge**
16  **for the limited purposes of settlement.**

17  **Plaintiffs' Position**: Plaintiffs are open to negotiations regarding a settlement or
18  consent judgment, but understand from the Secretary that neither is possible in this case.

19  **Defendant's Position:**

20  This case is not a candidate for settlement.

21  **6.**    **The amount of time the parties are proposing for oral argument on the**
22  **Plaintiffs' Motion for Preliminary Injunction.**

23  The parties propose setting aside 45 minutes for each side to present oral argument
24  on Plaintiffs' Motion for Preliminary Injunction.  If the Court would find it helpful to hear
25  live testimony, the Court should set aside one to two full court days to conduct an
26  evidentiary hearing. [4]

27  _____

28      [4]Further, in the interests of efficiency and resource management, Plaintiffs request
that any admissible evidence introduced at a live evidentiary hearing on Plaintiffs' Motion

**7.     Each party's position on Plaintiffs' suggestion that the Court convert the preliminary injunction proceeding into an expedited trial on the merits pursuant to Rule 65(a)(2), and a proposed timeline for those proceedings.**

**Plaintiffs' Position**: As discussed in Plaintiffs' Preliminary Statement, Plaintiffs' primary goal is ensuring that the Court is able to issue an order by April 2020 in order to make available injunctive relief by June or July. Plaintiffs believe that their claims are amenable to resolution in their favor on preliminary injunction. Plaintiffs remain flexible as to other procedural mechanisms, however, to the extent the Court believes that a live evidentiary hearing or an expedited trial would be helpful and could be held in time to allow for this Court to issue a ruling by April 2020 or to otherwise ensure that meaningful injunctive relief is available in time for the November 2020 election.

**Defendant's Position:**

In light of the information currently available to the parties regarding the counties' timelines for preparing ballots in advance of the November 2020 election, the Secretary prefers that the Court proceed with the preliminary injunction proceedings in lieu of converting those proceedings into an expedited trial on the merits.

In the event the Court elects to consolidate the hearing with a trial on the merits, depositions will be necessary.  In that case, the Secretary would request that a trial be scheduled no earlier than mid-May 2020 to allow the parties to complete depositions in April 2020.

**8.     Defendant's opinion as to the deadline by which she believes the Court would need to rule on an injunction, and if granted, the estimated time that Defendant would need to implement the remedies sought by Plaintiff.**

If this court enters a preliminary injunction that prohibits Arizona from using its Ballot Order Statute for the 2020 general election, there would need to be time for the State Legislature or this Court to modify the Ballot Order requirement and for counties to

_____

for Preliminary Injunction be admitted into a later trial record under Federal Rule of Civil Procedure 65(a)(2) so that any live testimony need not be repeated at the merits stage.

1   implement the new ballot order requirement for the general election. Based on information
2   county election officials have provided to the Secretary, the Secretary understands that the
3   counties may be able to implement a different Ballot Order for the 2020 general election if
4   they know the new Ballot Order requirements by July, but early June is a conservative
5   deadline for changing the Ballot Order requirements. If the case proceeds to oral argument
6   on Plaintiffs' Motion for Preliminary Injunction in April 2020, as the Secretary requests,
7   this Court should have time to issue its ruling on the Preliminary Injunction and, if Plaintiffs'
8   Motion is granted, for a different Ballot Order requirement to be established, either by the
9   Legislature or this Court, by early June or July. If the Motion for Preliminary Injunction is
10  granted, the Secretary recommends that the Court set a status conference so the parties can
11  address changes to the Ballot Order requirements for the 2020 general election.

12      **9.      Any other information regarding scheduling that the parties wish the**
13  **Court to consider.**

14      **Plaintiffs' Position**: Plaintiffs emphasize that the Court should set whatever
15  schedule it prefers that permits it to issue a decision by April. Based on Plaintiffs'
16  understanding of the Secretary's current position, issuing a decision later than that runs the
17  risk of prejudicing Plaintiffs' ability to obtain effective relief for the 2020 election. Plaintiffs
18  filed this case a full year in advance of the next election, and the remedy they seek is
19  straightforward. It is crucial that the ultimate resolution of the serious constitutional issues
20  in this case not be effectively denied due to preventable procedural delays.

21

22      **Defendant's Position:**

23      The Secretary is entitled to due process in defending the constitutionality of A.R.S.
24  § 16-502(E).  The Ballot Order Statute has existed for decades, yet Plaintiffs have waited
25  until now to challenge it.  The Secretary is mindful of Plaintiffs' concerns that this case is
26  time-sensitive, but similarly needs sufficient time to rebut Plaintiffs' fact-intensive and
27  detailed expert reports.  Proceeding with the preliminary injunction proceedings is an
28  efficient use of the Court's and both parties' time and resources, and the Secretary's

1  proposed timeline is reasonable under the circumstances.   Defendants have advised

2  Plaintiffs in good faith that a decision would need to be reached in the June-July timeframe

3  to be implemented, but Plaintiffs are instead arguing for an April decision deadline, which

4  is not reasonable or fair under the circumstances.

5

Dated:  December 16, 2019                    */s    Sarah R. Gonski*
6                                            Sarah R. Gonski (Bar No. 032567)
                                             **PERKINS COIE LLP**
7                                            2901 North Central Avenue, Suite 2000
                                             Phoenix, Arizona 85012-2788
8                                            Telephone:  (602) 351-8000
                                             Facsimile:   (602) 648-7000
9                                            SGonski@perkinscoie.com

10                                           Marc E. Elias (WDC Bar No. 442007)*
                                             Elisabeth C. Frost (WDC Bar No. 1007632)*
11                                           John M. Geise (WDC Bar No. 1032700)*
                                             **PERKINS COIE LLP**
12                                           700 Thirteenth Street NW, Suite 600
                                             Washington, D.C. 20005-3960
13                                           Telephone:  (202) 654-6200
                                             Facsimile:   (202) 654-6211
14                                           MElias@perkinscoie.com
                                             EFrost@perkinscoie.com
15                                           JGeise@perkinscoie.com

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:  (206) 359-8000
Facsimile:   (206) 359-9000
AKhanna@perkinscoie.com

*Attorneys for Plaintiffs*


 */s Kara Karlson*
Kara Karlson (029407)
Assistant Attorney General
Linley Wilson (027040)
Deputy Solicitor General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone (602) 542-4951
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Linley.Wilson@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant*
*Arizona Secretary of State Katie Hobbs*

**CERTIFICATE OF SERVICE**

I hereby certify that on Monday, December 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

_/s Janet Roe_____