1    Sarah R. Gonski (Bar No. 032567)
     **PERKINS COIE LLP**
2    2901 North Central Avenue, Suite 2000
     Phoenix, Arizona 85012-2788
3    Telephone:  (602) 351-8000
     Facsimile:   (602) 648-7000
4    SGonski@perkinscoie.com

5    Marc E. Elias (WDC Bar No. 442007)*
     Elisabeth C. Frost (WDC Bar No. 1007632)*
6    John M. Geise (WDC Bar No. 1032700)*
     **PERKINS COIE LLP**
7    700 Thirteenth Street NW, Suite 600
     Washington, D.C. 20005-3960
8    Telephone:  (202) 654-6200
     Facsimile:   (202) 654-6211
9    MElias@perkinscoie.com
     EFrost@perkinscoie.com
10   JGeise@perkinscoie.com

11   Abha Khanna (WA Bar No. 42612)*
     **PERKINS COIE LLP**
12   1201 Third Avenue, Suite 4900
     Seattle, WA 98101-3099
13   Telephone: (206) 359-8000
     Facsimile: (206) 359-9000
14   AKhanna@perkinscoie.com

15   *Admitted Pro Hac Vice*

16   Attorneys for Plaintiffs

17                  UNITED STATES DISTRICT COURT

18                      DISTRICT OF ARIZONA

19   Brian Mecinas, *et al.*,                          No. 19-cv-05547-PHX-DJH

20              Plaintiffs,                             **PLAINTIFFS' RESPONSE IN
                                                        OPPOSITION TO DEFENDANT'S
21                  v.                                  MOTION TO DISMISS**

22   Katie Hobbs, in her official capacity as the
     Arizona Secretary of State,
23
                Defendant.
24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT............................................................................................................... 1

    A.    Plaintiffs have stated cognizable claims for relief. ...................................... 1

    B.    Plaintiffs have standing......................................................................... 5

        1.    The Committee Plaintiffs have standing. ................................. 5

        2.    The Voter Plaintiffs have standing. ................................................ 8

    C.    The Secretary is the State's chief elections officer and the proper defendant.................................................................................................... 10

    D.    The Eleventh Amendment permits Plaintiffs' suit. ................................. 12

    E.    This case is justiciable, and *Rucho* does not control. .............................. 15

CONCLUSION ....................................................................................................... 17

1

**CASES**

2

*Akins v. Sec'y of State*,
   904 A.2d 702 (N.H. 2006) ............................................. 3

3

4

*Ariz. Democratic Party v. Reagan*,
   No. CV-16-03618-PHX-SPL, 2016 WL 6523427 (D. Ariz. Nov. 3,
   2016) ................................................................ 10

5

6

*Ariz. Libertarian Party, Inc. v. Bayless*,
   351 F.3d 1277 (9th Cir. 2003) ..................................... 11

7

8

*Bd. of Election Comm'rs of Chicago v. Libertarian Party of Illinois*,
   591 F.2d 22 (7th Cir. 1979) ....................................... 14

9

10

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ................................................ 3

11

12

*Bush v. Gore*,
   531 U.S. 98 (2000) ................................................. 9

13

14

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................... 14

15

16

*City of Cleburne v. Cleburne Living Center*,
   473 U.S. 432 (1985) ................................................ 5

17

*Clough v. Guzzi*,
   416 F. Supp. 1057 (D. Mass. 1976) ................................. 4

18

19

*Coal. to Defend Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012) ..................................... 11

20

21

*Confederated Tribes & Bands of the Yakama Indian Nation v. Locke*,
   176 F.3d 467 (9th Cir. 1999) ...................................... 13

22

23

*Crawford v. Marion Cty. Election Bd.*,
   472 F.3d 949 (7th Cir. 2007) ....................................... 8

24

25

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) ................................................ 3

26

*Dem. Nat'l Committee v. Reagan*,
   329 F. Supp. 3d 824 (D. Ariz. 2018) (vacated on other grounds) ...... 6, 8

27

28

*Diamond v. Charles*,
   476 U.S. 54 (1986) ................................................ 11

*Drake v. Obama*,
   664 F.3d 774 (9th Cir. 2011) ..................................................................... 7, 9

*Ex parte Young*,
   209 U.S. 123 (1908) .................................................................................... 12

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ........................................................................................ 9

*Gould v. Grubb*,
   536 P.2d 1337 (Cal. 1975) ............................................................................ 9

*Graves v. McElderry*,
   946 F. Supp. 1569 (W.D. Okla. 1996) ........................................... 2, 3, 9, 15

*Grizzle v. Kemp*,
   634 F.3d 1314 (11th Cir. 2011) .................................................................. 11

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
   487 F. App'x 189 (5th Cir. 2012) ................................................................. 7

*Harkless v. Brunner*,
   545 F.3d 445 (6th Cir. 2008) ..................................................................... 11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ...................................................................................... 7

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ...................................................................................... 5

*Jacobson v. Lee*,
   No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15,
   2019) ................................................................................................... passim

*Jewel v. Nat'l Sec. Agency*,
   673 F.3d 902 (9th Cir. 2011) ....................................................................... 9

*Kautenberger v. Jackson*,
   85 Ariz. 128 (1958) ................................................................................. 2, 16

*Leonard v. Clark*,
   12 F.3d 885 (9th Cir. 1993) ......................................................................... 5

*Mann v. Powell*,
   314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970) ................... 2

*McLain v. Meier*,
    637 F.2d 1159 (8th Cir. 1980) .............................................................. 2, 4, 15

*Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*,
    467 F.3d 999 (6th Cir. 2006) .................................................................. 6, 7

*Netsch v. Lewis*,
    344 F. Supp. 1280 (N.D. Ill. 1972) ............................................................. 2

*Norman v. Reed*,
    502 U.S. 279 (1992) ................................................................................. 3

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) .................................................................. 11

*Owen v. Mulligan*,
    640 F.2d (9th Cir. 1981) ........................................................................ 5, 7

*Project Vote/Voting for Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ...................................................... 11

*Pub. Integrity All., Inc. v. City of Tucson*,
    836 F.3d 1019 (9th Cir. 2016) ................................................................. 3

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
    697 F.3d 1192 (9th Cir. 2012) ................................................................. 2

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ............................................................. 1, 15, 16, 17

*Sangmeister v. Woodard*,
    565 F.2d 460 (7th Cir. 1977) ................................................................... 2

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ............................................................. 3, 4, 5

*Texas Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) (Texas Democratic Party "has standing on behalf of its candidate") ................................................................... 6, 7

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) .............................................................................. 14

*Tohono O'Odham Nation v. Ducey*,
    130 F. Supp. 3d 1301 (D. Ariz. 2015) ...................................................... 13

*United States v. Missouri*,
  535 F.3d 844 (8th Cir. 2008) ....................................................... 11

*United States v. Singh*,
  924 F.3d 1030 (9th Cir. 2019) ...................................................... 2

*United States v. Students Challenging Regulatory Agency Procedures
  (SCRAP)*,
  412 U.S. 669 (1973) ...................................................................... 8

*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000) ...................................................... 3

*Wilson v. Stocker*,
  819 F.2d 943 (10th Cir. 1987) .................................................... 11

**STATUTES**

A.R.S. § 16-142(A) ........................................................................ 11

A.R.S. § 16-452 ............................................................................ 12

A.R.S. § 16-452(A) ....................................................................... 12

A.R.S. § 16-452(B), (C) ................................................................ 12

A.R.S. § 16-464 ............................................................................ 15

A.R.S § 16-502(E) ................................................................... 1, 13

A.R.S. § 16-502(H) ...................................................................... 15

A.R.S. § 16-503 ............................................................................ 12

52 U.S.C. §§ 30101(14)-(15) ......................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The case presents a straightforward question: Does the Constitution permit Arizona to maintain a ballot order system that favors certain candidates based on their political affiliation over others similarly situated? Plaintiffs allege that Arizona's Ballot Order Statute, A.R.S § 16-502(E), has done just that, putting its thumb on the scale in the favor of Republican candidates for 31 of the past 39 years by allotting them priority status on the vast majority of general election ballots. This is far from a novel claim: court after court has not only considered challenges to ballot order statutes, they have consistently found similar laws unconstitutional. Unless the Ballot Order Statute is enjoined, that state-conferred advantage will continue in the 2020 general election.

Instead of grappling head-on with the serious constitutional claims that Plaintiffs raise, Defendant Arizona Secretary of State (the "Secretary") moves to dismiss the Complaint in its entirety. *See* Doc. 26 ("Mot."). Although brought under both Rule 12(b)(1) and 12(b)(6), the motion to dismiss spends very little time on the argument that Plaintiffs have failed to state a cognizable claim, which mischaracterizes the allegations in the Complaint, misstates inherent characteristics of the Statute, and contradicts binding precedent. The remainder of the motion is spent conjuring doubt as to whether this case is justiciable at all. In doing so, the Secretary parrots arguments made repeatedly by states attempting to turn away voting rights plaintiffs at the courthouse door (including some that Arizona itself has previously tried without success). None can withstand scrutiny. Plaintiffs have standing; the Secretary is the proper defendant; the Eleventh Amendment does not bar this suit; and the Supreme Court's recent (and highly distinguishable) partisan gerrymandering decision in *Rucho v. Common Cause* does not suddenly make this case non-justiciable. The Secretary's motion to dismiss should be denied.

**ARGUMENT**

**A.     Plaintiffs have stated cognizable claims for relief.**

The Secretary dedicates just three pages to discussing the merits of Plaintiffs arguments, and for good reason: the allegations in the Complaint more than establish a

cognizable claim that the Ballot Order Statute violates the First and Fourteenth Amendments. Plaintiffs challenge the constitutionality of Arizona's Ballot Order Statute, which mandates that the first position in the ballot in any partisan race in an Arizona general election be assigned to the candidates of a specific political party. Am. Compl. ¶5. Although political parties and candidates have long suspected that ballot order matters, decades of research now overwhelmingly prove that, because of a phenomenon referred to alternatively as the "primacy effect," "position bias," or "ballot order effect," the first-listed candidate on a ballot gains an inherent electoral advantage, merely as a result of their being first. *Id.* ¶¶ 1, 28. This is far from a novel claim. Courts have repeatedly found allegations such as Plaintiffs' sufficient not only to state a claim, but to prove a claim. *See*, *e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977); *Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, 2019 WL 6044035, at *12 (N.D. Fla. Nov. 15, 2019); *Graves v. McElderry*, 946 F. Supp. 1569, 1582 (W.D. Okla. 1996); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972); *Mann v. Powell*, 314 F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970). In fact, both the U.S. Supreme Court and the Arizona Supreme Court have passed on the constitutionality of ballot order statutes; in neither case, did they find that the claims were not cognizable or otherwise nonjusticiable. *See Mann*, 398 U.S. at 955; *Kautenberger v. Jackson*, 85 Ariz. 128, 131 (1958); *see also United States v. Singh*, 924 F.3d 1030, 1043 (9th Cir. 2019) ("[T]he Supreme Court's summary affirmances bind lower courts . . . .") (quotation marks and citation omitted). Plaintiffs' counsel is not aware of a single challenge brought by similarly-situated parties against a ballot order statute that was dismissed, and the Secretary gives no reason for this Court to depart from that precedent.

Even without this overwhelming precedent, the Secretary cannot meet the standard to justify dismissing any of Plaintiffs' claims. At this stage, courts must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196 (9th Cir. 2012). A claim should not be dismissed "unless it appears beyond doubt that

the plaintiff can prove no set of facts . . . that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). For the past 30-some years, ballot order cases, like other elections cases brought under the First and Fourteenth Amendments, have been decided using the *Anderson-Burdick* balancing test, which requires the court to "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Soltysik v. Padilla*, 910 F.3d 438, 443 (9th Cir. 2018); *Jacobson*, 2019 WL 6044035, at *22 (applying *Anderson-Burdick* test to Florida ballot order statute); *Graves*, 346 F. Supp. at 1578 (same); *Akins v. Sec'y of State*, 904 A.2d 702, 706-07 (N.H. 2006) (discussing how *Anderson-Burdick* is used to assess federal ballot order claims). This is a "flexible" sliding scale, where the rigorousness of scrutiny depends upon the extent to which the challenged law burdens voting rights. *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016). Thus, when a challenged law subjects voting rights to a "severe" restriction, it "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Even less severe burdens remain subject to balancing: "[h]owever slight" the burden on voting rights "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman*, 502 U.S. at 288-89).

Here, Plaintiffs bring straightforward equal protection claims alleging that the advantage the Ballot Order Statute confers on one group of political actors over another similarly situated violates their First and Fourteenth Amendment rights. Am. Compl. ¶¶ 49-63. The Secretary's attempt to recast Plaintiffs' complained-of injury as a general "right to a wholly rational election," Mot. at 14-15, is incompatible with the allegations in the Complaint and governing precedent. Plaintiffs' injury does not stem from the "irrational"

choices of other voters, but from the Statute itself, which requires the ballot order effect to benefit certain candidates based on their partisan affiliation. Am. Compl. ¶ 53, 61. These allegations are sufficient to establish a burden on Plaintiffs' First and Fourteenth Amendment rights. *See, e.g.*, *McLain*, 637 F.2d at 1163 (describing system of listing first candidates of party that received the most votes in last North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment").[1]

The Secretary's invitation to skip the merits and conclude that Plaintiffs' injuries would be "minimal" and justified by the state's interest cannot be reconciled with the Ninth Circuit's holding in *Soltysik v. Padilla*, 910 F.3d 438, 449 (9th Cir. 2018). In *Soltysik*, the district court dismissed an *Anderson-Burdick* challenge to a California election law, concluding—as a matter of law—that the burdens were not severe and that California's purported interests justified the law. On appeal, the Ninth Circuit reversed, emphasizing that ultimate application of *Anderson-Burdick* "rests on the specific facts of a particular election system, not on strained analogies to past cases. . . ." *Id.* at 444 (citing *Ariz. Green Party v. Reagan*, 838 F.3d 983, 990 (9th Cir. 2016)) (internal quotation marks and alterations omitted). Accordingly, the district court's conclusion was "premature" until "both sides ha[d] developed their evidence." *Id.* at 450. Without "evidence showing the true extent of the burden" or "the weightiness of California's interests in imposing that burden," the court found itself "in the position of Lady Justice: blindfolded and stuck holding empty scales." *Id.* (citing *Ariz. Libertarian Party*, 798 F.3d at 736). Here, granting the Secretary's

---

[1] Although the Secretary points to *Clough v. Guzzi*, 416 F. Supp. 1057 (D. Mass. 1976), for the premise that Plaintiffs' claim is primarily about a "pool of misinformed voters," Mot. at 14, 17, that case is highly distinguishable. In *Clough*, the court upheld an incumbent-first statute because plaintiffs failed to adequately prove that any advantage from being listed first was a result of ballot order rather than incumbency. *Id.* at 1066. Such concerns are not relevant here. *Cf. McLain*, 637 F.2d at 1167 (distinguishing *Clough* as "involv[ing] evidentiary considerations which do not apply here"). More importantly, *Clough* was decided following a merits hearing, 416 F. Supp at 1060, and thus provides no support for rejecting Plaintiffs' claims on a motion to dismiss. There is no reason that this Court should be swayed by a different district court's characterization of different plaintiffs' claims that have no bearing on the nature of the claims advanced here.

1    request would replicate the reversible error in *Soltysik*: the Court cannot skip its own

2    context-specific inquiry and prematurely weigh facts without an evidentiary record. At this

3    stage, it must accept as true the facts pled in the Complaint, which establish that the Ballot

4    Order Statute burdens Plaintiffs and is not justified by Arizona's interests. *See* Am. Compl.

5    ¶¶ 14, 55, 62.

6         Finally, the constitutional claims do not require Plaintiffs to allege either

7    "intentional" discrimination or that the Ballot Order Statute disadvantages them in every

8    single election. The Equal Protection Clause simply mandates "that all persons similarly

9    situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432,

10   439 (1985). Here, Plaintiffs plausibly allege arbitrary distinctions between similarly situated

11   voters and parties. *See* Am. Compl. ¶¶ 33-34.

12        **B.    Plaintiffs have standing.**

13        While only one plaintiff need have standing for a case to proceed, *Leonard v. Clark*,

14   12 F.3d 885, 888 (9th Cir. 1993), *all six* Plaintiffs here satisfy Article III's requirements.

15              **1.    The Committee Plaintiffs have standing.**

16        The Democratic National Committee ("DNC"), DSCC, and Priorities USA

17   (together, the "Organizational Plaintiffs") each have standing on behalf of their affiliated

18   candidates and voters, as well as in their own right.

19        As a threshold matter, the Secretary appears to concede that candidates have standing

20   to challenge ballot order statutes, Mot. at 4, 7, but fails to recognize a long line of precedent

21   establishing that the DNC and DSCC stand in the shoes of their affiliated candidates in this

22   litigation. An organization has associational standing on behalf of its members when "(a)

23   its members would otherwise have standing to sue in their own right; (b) the interests it

24   seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted

25   nor the relief requested requires the participation of individual members in the lawsuit."

26   *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). As many courts have

27   recognized, political parties have standing to challenge a law on behalf of their affiliated

28   candidates. *See, e.g.*, *Owen v. Mulligan*, 640 F.2d at 1130, 1133 (9th Cir. 1981) (Republican

party officials had standing to challenge law that disadvantaged affiliated candidates); *Dem. Nat'l Committee v. Reagan*, 329 F. Supp. 3d 824, 841-42 (D. Ariz. 2018) (vacated on other grounds) (DNC and DSCC had standing to challenge law that harmed affiliated voters and candidates); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586-88 (5th Cir. 2006) (Texas Democratic Party "has standing on behalf of its candidate"). This makes good sense: the interest Plaintiffs seek to protect is one that is shared by all their affiliated candidates— a right to an election free from the state-inflicted disadvantage conferred by the Ballot Order Statute. Am. Compl. ¶ 61. Although the Secretary claims—without any explanation—that this "fact-intensive" claim would require the participation of individual members, Mot. at 7, it is not at all evident why individual candidates need participate, nor what individualized set of facts they could offer that would streamline, rather than complicate, adjudication of this claim. *See Benkiser*, 459 F.3d at 589 (observing that "nothing requires the participation of [the candidate] himself" because his interests were fully represented by the Texas Democratic Party and the sought injunction "w[ould] inure" to his benefit).

The Secretary's further protest that "the beneficiaries of a plaintiffs' services do not qualify as members for the purposes of associational standing" finds no support in the lone case cited, *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006) ("*NEOCH*"). In that case, the Sixth Circuit's holding that a labor union and an organization that provided voter registration services to Ohio's homeless population lacked associational standing was premised on the facts that the complaint "contain[ed] no reference at all to injury to the plaintiffs' members," and provided "scanty information" about "whether the interests at stake . . . [were] germane to the organizations' purposes, which clearly are not primarily related to election or voters' rights issues." *Id.* at 1010. Neither fact is true here. *See* Am. Compl. ¶¶ 21-23 (Voter Plaintiffs allege that they are members of the Democratic Party and that they are harmed by the Ballot Order Statute); *id.* ¶¶ 24-26 (alleging that the DNC and DSCC are committees of the Democratic Party, as defined by 52 U.S.C. §§ 30101(14)-(15), and that each has the mission of electing candidates of the Democratic Party, including during the 2020 general

1 election); *id.* ¶ 25 (alleging that Plaintiff Priorities USA has a mission of electing

2 Democratic Party candidates).[2]

3      Although the Court need not look beyond associational standing to proceed, the

4 Organizational Plaintiffs also have organizational and competitive standing. The Supreme

5 Court has long recognized that a direct organizational injury is cognizable in two ways: (1)

6 a diversion of organizational resources to identify or counteract the allegedly unlawful

7 action, or (2) frustration of the organization's mission. *See, e.g.*, *Havens Realty Corp. v.*

8 *Coleman*, 455 U.S. 363, 379 (1982). In the political context, courts have frequently

9 intermingled the concept of organizational standing with the related concept of "competitive

10 standing," recognizing that a political organization suffers direct organizational injury when

11 its "interest in having a fair competition" is compromised. *Drake v. Obama*, 664 F.3d 774,

12 782-83 (9th Cir. 2011); *see also Owen*, 640 F.2d at 1133 (holding that political candidate

13 and party had standing when they "sought to prevent their opponent from gaining an unfair

14 advantage in the election process"); *Benkiser*, 459 F.3d at 587 (observing that "voluminous

15 persuasive authority" shows that a political party is injured when its "candidate's chances

16 of victory" are reduced).

17      Here, Organizational Plaintiffs allege injuries sufficient to establish direct

18 organizational injury through both resource diversion and frustration of the organization's

19 mission—namely, their ability to elect Democratic candidates on an even playing field.

20 *Drake*, 664 at 782. The Ballot Order Statute frustrates their missions "to elect local, state,

21 and national candidates of the Democratic Party" to federal and state office in Arizona and

22 forces them to divert resources away from other mission-critical goals to combat the combat

23

24      [2] The allegations from Plaintiffs Mecinas, Serrano, and Vasko all contradict the

25 Secretary's claim that Plaintiffs have "not identified any members who are actually harmed." Mot. at 6. Plainly, they have identified three. In any event, the very case that the

26 Secretary relies upon expressly states that an association alleging prospective harm to its affiliated voters "need not identify specific voters who will be wronged by election

27 workers." *NEOCH*, 467 F. 3d at 1010; *see also Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an

28 association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing.").

the Ballot Order Statute's effect. Am. Compl. ¶¶ 24-25. The Complaint alleges that the Ballot Order Statute will give Republican candidates a distinct advantage in the 2020 election by allowing them to be listed first for every partisan race on over 80 percent of the ballots. *Id*. ¶ 41; *see also id.* ¶¶ 23-25, 27, 31-33. This unfair advantage requires Plaintiffs "to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Arizona, at the expense of its efforts in other states, to combat the effects of the Ballot Order Statute." *Id.* ¶ 24; *id.* ¶ 23 (DNC), ¶ 25 (Priorities); *see also Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) ("Thus the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote."); *Reagan*, 329 F. Supp. 3d at 841-42 (vacated on other grounds) (finding Democratic Party had organizational standing where challenged law forced it to "retool their GOTV strategies and divert more resources" and ramp up voter education efforts to keep law from affecting electoral success). These allegations, accepted as true at this stage, amply establish standing.

### 2.     The Voter Plaintiffs have standing.

The Secretary's argument that Voter Plaintiffs lack standing because they do not allege an actual injury ignores both the law and the allegations in the Complaint itself. The actual-injury element of standing is meant "to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). The Complaint establishes the Voter Plaintiffs' direct stake: each "will suffer serious, irreparable injury" as a result of the Ballot Order Statute, as the strength of their votes for Democratic candidates in the 2020 election will be weakened due to the head start given to Republican candidates, and their efforts to help elect Democratic candidates will be made more difficult. Am. Compl. ¶¶ 21-23.

The Secretary argues that the Statute "does not prevent Plaintiffs from voting for Democratic candidates, or persuading others to do so," Mot. at 5, but fails to recognize that

the reduction in value of their votes is an actual injury by itself. *See Bush v. Gore*, 531 U.S. 98, 104-05 (2000) ("It must be remembered that the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). Other courts adjudicating similar claims have also had little trouble determining that ballot order schemes can injure voters whose candidates are disadvantaged. *Jacobson*, 2019 WL 6044035, at *5 (finding individual plaintiffs had standing to challenge ballot order statute that unduly burdened their right to vote by giving arbitrary advantage to candidates of one political party); *Graves*, 946 F. Supp. at 1579 (finding ballot order statute injured voters); *Gould v. Grubb*, 536 P.2d 1337, 1343 (Cal. 1975) (relying on Supreme Court precedent to find that incumbent-first statute "substantially dilutes the weight of votes of those supporting nonincumbent candidates"). The Ninth Circuit has additionally recognized that a voter can have an injury for standing purposes that is "derived from the competitive interest of his preferred candidates." *Drake*, 664 F. 3d at 784. Here, the Complaint sufficiently alleges that the Ballot Order Statute creates a built-in bias against the candidates preferred by Voter Plaintiffs. *See, e.g.*, Am. Compl. ¶¶ 33, 53. Because Voter Plaintiffs sufficiently alleges a burden on their right to vote, they allege an actual injury to establish standing.[3]

The Secretary's additional argument that "Plaintiffs' votes are not devalued because other voters hypothetically cast theirs in an irrational way," Mot. at 6, ignores the heart of Plaintiffs' claim. Simply put, when a well-established and robust body of behavioral science scholarship confirms that ballot order effect exists and significantly distorts elections, a state's insistence on persistently granting the favored top position to certain candidates grafts a *state-inflicted* disadvantage to later-listed candidates. The injury upon Plaintiffs is not that voters are susceptible to the common psychological phenomenon of primacy effect;

---

[3] Nor does "the fact that a harm is widely shared . . . necessarily render it a generalized grievance." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 909 (9th Cir. 2011). The Supreme Court expressly stated that one example of a widely-shared but concrete injury is "where large numbers of voters suffer interference with voting rights conferred by law." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24, (1998).

it is that the state implements a ballot order scheme that ensures the predictable advantage will accrue to candidates of a certain political party. *See Jacobson*, 2019 WL 6055035, at *6.

### C. The Secretary is the State's chief elections officer and the proper defendant.

Recycling an argument that has been repeatedly rejected by District Courts in Arizona, the Secretary broadly disclaims responsibility for Arizona's election laws and claims that any injuries complained of are not redressable against her because county election officials prepare ballots. Mot. at 8. This assertion cannot withstand scrutiny.

As noted, this is not the first time Arizona's Secretary of State has attempted to foist litigation responsibilities onto Arizona's fifteen counties. In 2016, in a case in which the plaintiffs sought to enjoin the Secretary from enforcing Arizona's voter-registration deadline because it fell on a federal holiday, the Secretary moved to dismiss making virtually the same argument: that "she does not have authority under Arizona law to declare who is, and who is not, a registered voter" and that "it is the *Counties*, not the Secretary, who are responsible for disqualifying voters who fail to comply with registration requirements." *Ariz. Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *1, *6 (D. Ariz. Nov. 3, 2016) (quotation marks omitted). Judge Logan rejected the Secretary's assertions, finding that "[t]he Secretary mischaracterizes the nature of her position and her relationship with the counties in administering voter registration." *Id.* at *6. He explained that "[t]he Secretary is Arizona's chief election officer who is responsible for overseeing and administering elections in Arizona"; "[t]he Secretary has the authority to promulgate rules and procedures for elections"; and "[a]ny person who does not abide by the Secretary's rules is subject to criminal penalties." *Id.*; *see also id.* at *7 ("Because the Secretary has the authority to ensure compliance with election regulations, a mandatory injunction issued against her would redress the Committees' alleged injuries."). In 2016, Judge Rayes also rejected the Secretary's argument that the counties, not her, were the proper defendants in an action challenging several election laws, observing that her

1   "contention reflects both a misconception of [her] role in overseeing and administering

2   elections and an overly mechanical interpretation of Plaintiffs' requested relief." Order,

3   *Dem. Nat'l Com. v. Reagan*, CV-16-01065-DLR, Doc. 267 at 6 (March 3, 2017). The Ninth

4   Circuit has likewise rejected a similar argument. *See Ariz. Libertarian Party, Inc. v. Bayless*,

5   351 F.3d 1277, 1280-81 (9th Cir. 2003) (affirming district court's holding that Secretary's

6   broad responsibility to oversee the administration of elections made her the proper

7   defendant in challenge to Arizona election law).[4]

8       All of these cases are consistent with long-standing Supreme Court precedent

9   establishing that the Eleventh Amendment permits "actions for prospective declaratory or

10  injunctive relief against state officers in their official capacities for their alleged violations

11  of federal law" as long as the state officer has "some connection with the enforcement of

12  the act." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)

13  (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). This rule is grounded in the principle

14  that "[a] suit against a state officer in his official capacity is, of course, a suit against the

15  State." *Diamond v. Charles*, 476 U.S. 54, 57 n.2 (1986). Thus when a plaintiff sues a state

16  official in his official capacity, "a controversy exists not because the state official is himself

17  a source of injury, but because the official represents the state whose statute is being

18  challenged as the source of injury." *Wilson v. Stocker*, 819 F.2d 943, 946-47 (10th Cir. 1987)

19  (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

20      As "[t]he chief state election officer" of Arizona, A.R.S. § 16-142(A), the Secretary

21

22      [4] Arizona courts are not alone in finding that the State's Secretary of State is the
    proper defendant in challenges to state election laws. *See, e.g.*, *OCA-Greater Houston v.
23  Texas*, 867 F.3d 604, 613 (5th Cir. 2017) (explaining "[t]he facial invalidity of a Texas
    election statute is, without question, fairly traceable to and redressable by the State itself
24  and its Secretary of State, who serves as the 'chief election officer of the state'"); *Grizzle v.
    Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (rejecting argument Secretary of State was not
25  proper defendant in challenge to election laws because, "[a]lthough the Secretary of State
    cannot directly [carry out requested relief], he has both the power and the duty to ensure
26  that the entities charged with those responsibilities comply with Georgia's election code in
    carrying out those tasks"); *United States v. Missouri*, 535 F.3d 844, 846 n.1 (8th Cir. 2008)
27  (injury stemming from election law redressable by Missouri Secretary of State); *Harkless
    v. Brunner*, 545 F.3d 445, 451-52 (6th Cir. 2008) (same); *Project Vote/Voting for Am., Inc.
28  v. Long*, 752 F. Supp. 2d 697, 699 (E.D. Va. 2010).

is the correct defendant in challenges to Arizona's election laws. The Secretary oversees every aspect of elections in Arizona and has the authority to "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots," A.R.S. § 16-452(A). The Secretary promulgates regulations to county officials in the Election Procedures Manual, which is issued every two years and carries the force of law. A.R.S. § 16-452(B), (C) (making it a class 2 misdemeanor to violate a rule promulgated by the secretary). In the 2019 Manual, issued just weeks ago, the Secretary issued detailed instructions on ballot design and expressly required counties to order candidates' names on ballots according to the Ballot Order Statute. 2019 Elec. Proc. Manual, available at https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDUR ES_MANUAL_APPROVED.pdf at 145 (last accessed January 14, 2020). That county officials actually *print* the ballots under A.R.S. § 16-503, does not mean that they are the correct defendants, because they have no discretion in how they go about that task. Instead, they are bound by law to follow the Ballot Order Statute (which the Secretary has a duty to implement, A.R.S. § 16-452), and the Manual (which she publishes herself). Accordingly, she is precisely the correct defendant to represent the State in this case under *Ex parte Young*.

### D.    The Eleventh Amendment permits Plaintiffs' suit.

The Secretary's argument that the Eleventh Amendment bars this suit is based on the mistaken premises that the Secretary is not the proper defendant and that Plaintiffs are seeking an order that would require the Secretary to wholly re-write Arizona's ballot ordering scheme. Neither is true.

First, for the reasons discussed above, the Secretary is undeniably the proper defendant, and Plaintiffs' suit, which is brought against the Secretary in her official capacity for prospective relief, Am. Compl. ¶¶ 13-15, fits perfectly within *Ex Parte Young*'s exception to sovereign immunity. *Supra* at 10-12. The Secretary's argument that she is not the correct defendant for Eleventh Amendment purposes relies on two distinguishable

cases: *Confederated Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999), and *Tohono O'Odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1309-10 (D. Ariz. 2015). Mot. at 10 (citing A.R.S. § 16-503). In *Confederate Tribes*, the defendant wholly lacked connection to the challenged practice (operation of the state lottery), and the plaintiff had not alleged otherwise. 176 F.3d at 469-70. In *Tohono O'Odham Nation*, the district court found that the Eleventh Amendment barred suit against the Arizona Governor and Attorney General where the only connection between them and the challenged practice (denial of gaming certifications) was a letter their offices voluntarily sent to the Arizona Department of Gaming, the agency actually in charge of issuing gaming certifications. 130 F. Supp. 3d at 1309-10. Neither case influences the inquiry here, where the Secretary is firmly connected to the challenged practice by her duty to enforce the election laws, which include the Ballot Order Statute, and to oversee the creation of ballots. *See supra* at 12.

Second, the Secretary's argument that the Eleventh Amendment bars relief because the requested injunction would require her to perform a wholesale re-write of Arizona's ballot order scheme is based on a flatly inaccurate reading of the Ballot Order Statute and of Plaintiffs' Complaint. Although she claims that Plaintiffs "demand [that] this Court" "create a definition of 'major parties' where Arizona has none," and then "begin discriminating in favor of the 'major parties,'" Mot. at 11, her characterization ignores that the Ballot Order Statute *itself* imposes a tiered system in which candidates are grouped according to party into the following four tiers:[5]

---

[5] The full provision provides: "The lists of the candidates of the several parties shall be arranged with the names of the parties in descending order according to the votes cast for governor for that county in the most recent general election for the office of governor, commencing with the left-hand column. In the case of political parties that did not have candidates on the ballot in the last general election, such parties shall be listed in alphabetical order below the parties that did have candidates on the ballot in the last general election. The names of all candidates nominated under § 16-341 shall be placed in a single column below that of the recognized parties." A.R.S. § 16-502(E).

| 1 | Candidates from parties that had a gubernatorial candidate last election |
| 2 | Candidates from parties that <u>did not</u> have a gubernatorial candidate last election |
| 3 | Candidates not affiliated with any political party |
| 4 | Write-in candidates |

Plaintiffs' use of the term "major party" in the Complaint is a shorthand reference to the candidates that the Ballot Order Statute already groups into Tier 1: candidates who belong to a party that ran a candidate in the last gubernatorial election. In other words, the *Arizona Legislature*, not Plaintiffs, previously chose that method to serve its goal of grouping major party candidates together at the top of the ballot for easy location. Plaintiffs accordingly seek the remedy that is least disruptive to the legitimate policy choices made by the Legislature in drafting the Ballot Order Statute. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). Unlike Arizona's choice to arbitrarily and consistently favor candidates based on their party affiliation for the top slot on the ballot, the choice to arrange the ballots in tiers placing major parties on top is a legitimate policy choice. *See Bd. Of Election Comm'rs of Chicago v. Libertarian Party of Illinois*, 591 F.2d 22, 25 (7th Cir. 1979) (upholding two-tiered ballot ordering system that placed minor party candidates below major party candidates); *see also id.* at 26 (collecting cases to support proposition that "distinctions between major and minor political parties do not necessarily violate the equal protection clause"); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) (states may constitutionally "enact reasonable election regulations that may, in practice, favor the traditional two-party system").[6] But while courts have been clear that states may create tiered systems like Arizona's to organize their ballots, they have been equally clear that a state is not permitted to differentiate between candidates

---

[6] Plaintiffs expressly do not challenge the method by which the State groups candidates into tiers, organizes those tiers on the ballot, or orders candidates within Tiers 2-4, *see* Am. Compl. ¶ 5 n.3, nor is it clear that they would have standing to do so.

1    *within the same tier*. *See Graves*, 946 F. Supp. at 1580-81; *McLain*, 637 F.2d at 1166.

2        In sum, the remedy Plaintiffs seek is narrow and honors Arizona's existing policy

3    choices. Their request is simply that the Court order Arizona to stop unconstitutionally

4    differentiating between candidates *in the same tier* (who are, by definition, similarly

5    situated) on the basis of their party affiliation. Fixing the problem is not difficult; Arizona

6    can, for instance, neutralize position bias within Tier 1 by implementing the exact same

7    precinct-by-precinct rotational system that it already uses in primary systems or in general

8    elections under certain circumstances. *See* A.R.S. § 16-464 (in primary elections, names of

9    candidates shall be rotated so that "the name of each candidate shall appear substantially an

10   equal number of times at the top, at the bottom" of ballots across the jurisdiction); A.R.S. §

11   16-502(H) (in general election where candidates from same political party run for same

12   office, names are rotated in same manner as in primary elections). Because the relief sought

13   is straightforward and adheres closely to Arizona's existing election laws, the Eleventh

14   Amendment permits the suit.

15       **E.   This case is justiciable, and *Rucho* does not control.**

16       The Secretary next makes the remarkable claim that this Court should give an

17   expansive reading to the Supreme Court's determination in *Rucho v. Common Cause*, 139

18   S. Ct. 2484 (2019), to hold that essentially any elections-related challenge with political

19   ramifications is non-justiciable. But *Rucho*'s reach is unambiguously limited to partisan

20   gerrymandering cases, which for a host of reasons are highly distinguishable from this case.

21   While federal courts were fruitlessly wrestling with the proper legal test to apply to partisan

22   gerrymandering claims for decades, they have been easily and ably deciding the type of

23   First and Fourteenth Amendment challenges at issue here—including to ballot order statutes

24   specifically—using the now familiar *Anderson-Burdick* balancing test. *Supra* at 2, 3. The

25   Secretary's *Rucho* argument is a meritless diversion.

26       Instead of explaining why the Court should expand *Rucho* beyond the partisan

27   gerrymandering context, the Secretary mainly appears to employ *Rucho* as a way of painting

28   Plaintiffs' requested relief as self-serving and unfair. Mot. at 12-13. Her rhetorical

questions—"does fairness require that *no* votes be affected by ballot order?...no candidate?...no party?"—are readily answerable. Of course it doesn't. Because names on ballots appear on lists, ballots (like all other visually-presented lists of choices, in contexts far beyond elections) are always subject to position bias. Obviously, someone will always be listed first, and that person will always reap the benefits of the ballot order effect. But fairness in the ballot order context means that the benefit of that windfall should be distributed equally among similarly-situated parties, not accrue to the same party over and over. *See Jacobson*, 2019 WL 6055035, at *6 (noting the plaintiffs' claim "is not based on the mere existence of the primacy effect vote and its impact on elections" but rather on "the fact that [the] ballot order statute allocates the primacy effect vote to groups of candidates on the sole basis of partisan affiliation").

The Secretary's feigned helplessness in envisioning a sufficient remedy is undermined considerably by the fact that Arizona is patently aware of what "fair" ballot order looks like and how to implement it. *Supra* at 15. It implemented precinct-by-precinct rotation in its primary elections precisely because the Arizona Supreme Court recognized the "well-known fact" that, "where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage," and without name rotation, candidates whose names are never listed first are "disadvantage[d]." *Kautenberger*, 85 Ariz. 128. Plaintiffs' requested relief is merely that Arizona extend its neutral ballot-ordering scheme to include general elections.

The remainder of the Secretary's *Rucho* argument is compromised by the fact that she heaps blame upon Plaintiffs for the practical realities of Arizona's election landscape. While the Secretary again takes Plaintiffs to task for "intentionally exclud[ing]" minor parties and independent candidates from their requested relief, Mot. at 13, her quibble lies not with Plaintiffs but with the Arizona Legislature (who decided that ballots in Arizona should list the parties that had a gubernatorial candidate in the last election in the first tier), and with federal courts (who have routinely upheld such tiered systems as fair because minor party and independent candidates are not similarly situated to major parties and thus

have no special claim to equal treatment). *Supra* at 14-15. Likewise, the Secretary's accusation that Plaintiffs' discussion of Maricopa County indicates that their true motive is "their discontent with election results in Maricopa County," Mot. at 13, ignores that Plaintiffs do not challenge any election results. Further, the focus on Maricopa County is logical: that county contains a full *two-thirds* of the state's voters and thus, as a mathematical matter, always determines who is listed first on the majority of ballots in the state. Am. Compl. ¶ 12. None of these complaints have anything to do with the Supreme Court's decision in *Rucho*, nor do they render this case (or any other raising claims *other than partisan gerrymandering* claims) nonjusticiable.

In contrast to *Rucho*, here the Court is not being asked to conjure a fairness standard for an inherently partisan activity or to re-allocate political power. Plaintiffs merely ask the Court to apply a straightforward *Anderson-Burdick* analysis to an elections administration provision—exactly the type of task the *Anderson-Burdick* framework was developed to accomplish. It is an evaluation that federal courts have conducted for decades. *Supra* at 2-3. *Rucho* provides no support for the premise that federal courts are suddenly unable to do so now.

## CONCLUSION

Plaintiffs request that the Court deny the Secretary's Motion to Dismiss in whole.

1

2

3   Dated:  January 16, 2019

                                         */s    Sarah R, Gonski*

4   Sarah R. Gonski (Bar No. 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000

5   Phoenix, Arizona 85012-2788
Telephone:  (602) 351-8000

6   Facsimile:  (602) 648-7000
SGonski@perkinscoie.com

7   Marc E. Elias (WDC Bar No. 442007)*
Elisabeth C. Frost (WDC Bar No. 1007632)*

8   John M. Geise (WDC Bar No. 1032700)*
**PERKINS COIE LLP**

9   700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960

10   Telephone:  (202) 654-6200
Facsimile:   (202) 654-6211

11   MElias@perkinscoie.com
EFrost@perkinscoie.com

12   JGeise@perkinscoie.com

13   Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**

14   1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

15   Telephone:  (206) 359-8000
Facsimile:   (206) 359-9000

16   AKhanna@perkinscoie.com

17   *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on Monday, December 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.


*/s/ Michelle DePass* _____