Sarah R. Gonski (Bar No. 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Marc E. Elias (WDC Bar No. 442007)*
Elisabeth C. Frost (WDC Bar No. 1007632)*
John M. Geise (WDC Bar No. 1032700)*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
AKhanna@perkinscoie.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Mecinas, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as the Arizona Secretary of State,<br><br>Defendant. | No. 19-cv-05547-PHX-DJH<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO AMICI CURIAE OF THE ARIZONA HOUSE SPEAKER RUSSELL BOWERS AND ARIZONA SENATE PRESIDENT KAREN FANN** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    I.   Plaintiffs' injuries are traceable to the Statute. ................................................. 2

    II.  Amici mischaracterize the *Anderson-Burdick* test and Plaintiffs' burdens. ..... 3

    III. None of the interests Amici proffer speak to the Ballot Order Statute's favoritism of a specific category of candidate. ................................................... 6

CONCLUSION ............................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Celebrezze*,
 460 U.S. 780 (1983) .................................................................................................. 4

*Arizona Libertarian Party v. Reagan*,
 798 F.3d 723 (9th Cir. 2015) .................................................................................... 3

*Burdick v. Takushi*,
 504 U.S. 428 (1992) .................................................................................................. 3

*Charfauros v. Bd. of Elections*,
 249 F.3d 941 (9th Cir. 2001) .................................................................................... 5

*Clough v. Guzzi*,
 416 F. Supp. 1057 (D. Mass. 1976) .......................................................................... 3

*Crawford v. Marion Cty. Election Bd.*,
 553 U.S. 181 (2008) .............................................................................................. 4, 7

*Culliton v. Bd. of Election Comm'rs of DuPage Cty.*,
 419 F. Supp. 126 (N.D. Ill. 1976) ............................................................................. 5

*Graves v. McElderry*,
 946 F. Supp. 1569 (W.D. Okla. 1996) ...................................................................... 7

*Jacobson v. Lee*,
 411 F. Supp. 3d 1249 1273-74 (N.D. Fla. 2019) ................................................... 3, 5

*Kautenburger v. Jackson*,
 333 P.2d 293 (Ariz. 1958) ..................................................................................... 1, 7

*Libertarian Party of Virginia v. Alcorn*,
 826 F.3d 708 (4th Cir. 2016) .................................................................................... 3

*Mann v. Powell*,
 314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970) ............................ 1, 5, 6

*McLain v. Meier*,
 637 F.2d 1159 (8th Cir. 1980) .................................................................................. 5

*Miller v. Moore*,
 169 F.3d 1119 (8th Cir. 1999) .................................................................................. 7

*Netsch v. Lewis*,
    344 F. Supp. 1280 (N.D. Ill. 1972) .................................................................................. 5

*New Alliance Party v. New York State Board of Elections*,
    861 F. Supp. 282 (S.D.N.Y. 1994) ................................................................................... 3

*Sangmeister v. Woodard*,
    565 F.2d 460 (7th Cir. 1977) ....................................................................................... 5, 7

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ....................................................................................... 4, 5

**STATUTES**

A.R.S. § 16-464 ....................................................................................................................... 7

A.R.S. § 16-502(E) .................................................................................................................. 8

A.R.S. § 16-502(H) .................................................................................................................. 7

A.R.S. § 12-1841(E) ................................................................................................................ 1

**INTRODUCTION**

If the Court considers the brief submitted by Arizona House Speaker Russell Bowers and Arizona Senate President Karen Fann ("Amici") (Doc. 31 ("Br.")), Plaintiffs respectfully request it accept this short response.[1] Like the Secretary, Amici mischaracterize Plaintiffs' claims and rely on inapposite case law—ignoring the large body of case law addressing analogous claims by analogous claimants in which courts have routinely found laws like the Ballot Order Statute unconstitutional. Like the Secretary, Amici also make no mention of the Arizona Supreme Court's decision in *Kautenburger v. Jackson*, 333 P.2d 293, 295 (Ariz. 1958), which found a statute governing primary elections that mandated a fixed alphabetical ballot order violated the Arizona Constitution's privilege and immunities clause (analogous to the U.S. Constitution's Equal Protection Clause), because it unfairly "disadvantage[d] [] some candidates." Nor do Amici attempt to address the U.S. Supreme Court's affirmance of an injunction of a ballot order scheme that, like the Ballot Order Statute at issue here, favored one class of candidates over others similarly situated. *Mann v. Powell*, 314 F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

In fact, Amici do not discuss *any* of the cases that Plaintiffs rely upon which establish not only that they have legally cognizable claims, but they are highly likely to succeed. Amici's brief reads like it was written in a parallel universe, where only the cases that Amici like best have been decided, and the Supreme Court has never had the opportunity to pass on the precise question before this Court: whether states may constitutionally operate a ballot order system that favors one type of candidate over others similarly situated. *Mann* and all of the other cases discussed at length in Plaintiffs' briefing make clear that the only

---

[1] While Amici correctly state Plaintiffs do not oppose the filing of their brief, whether to consider it remains within the Court's discretion. The statute cited by Amici in footnote 3 of their brief, by its terms, does not extend to federal proceedings. A.R.S. § 12-1841(E). And, just as Amici recognize there is no Local Rule governing amicus submissions in this District, none dictates the timing of filing a response to the same. Thus, Plaintiffs have followed the default briefing schedule under Local Rule 7.2(e)(1). Amici raise many of the same arguments Defendant Secretary of State Katie Hobbs (the "Secretary") has made, either in her motion to dismiss (Doc. 26), or response to Plaintiffs' motion for a preliminary injunction (Doc. 29). Plaintiffs responded in opposition (Doc. 27) and reply (Doc. 35), and do not repeat themselves here, except where unavoidable.

appropriate answer is that they may not. For the reasons set forth in Plaintiffs' other papers, as well as below, the Court should grant Plaintiffs' motion for a preliminary injunction and deny the Secretary's motion to dismiss.

## ARGUMENT

### I. Plaintiffs' injuries are traceable to the Statute.

Throughout their brief, Amici mischaracterize Plaintiffs' injuries to suggest they are not traceable to the Ballot Order Statute. *See, e.g.*, Br. 2 (asserting Plaintiffs' injuries are not attributable to Statute but "to the superseding choices of individual voters"); *see id.* at 8 (arguing "[w]hatever effect ballot order supposedly exerts is mediated through, and ultimately subsumed by, the intervening actions of individual voters"). But, as Plaintiffs have explained, it is the Ballot Order Statute's aggregation of a known phenomenon entirely in favor of a certain class of candidates in race after race, election after election, that causes Plaintiffs' injuries, not the other way around. *See, e.g.*, Doc. 27 at 9-10 (Plaintiffs' injury "is not that voters are susceptible to the common psychological phenomenon of primacy effect; it is that the [Statute] . . . ensures the predictable advantage will accrue to candidates of a certain political party."); *id.* at 3-4 ("Plaintiffs' injury does not stem from the 'irrational' choices of other voters, but from the Statute itself, which requires the ballot order effect to benefit certain candidates based on their partisan affiliation."). Removing the systemic favoritism mandated by the Ballot Order Statute would eliminate Plaintiffs' injury.

For the same reasons, Amici are wrong to suggest that Plaintiffs assert a "constitutional right to a wholly rational election" or a ruling that some voters' choices are "less meaningful" than others. Br. 9. Plaintiffs request forward-looking relief to cure a systemic bias built into Arizona's elections, which the undisputed evidence shows has resulted in significant electoral advantages to countless candidates based entirely on party affiliation. *See* Doc. 14 at 5-7. And they seek to do this by remedying the bias built into the system itself, not by rejecting a single ballot or denying a single voter their right to cast a ballot for anyone or any reason they wish.

Finally, Amici cite no authority for their entirely novel theory that an election law

may be shielded from constitutional review based on the "intervening actions" of voters. *See* Br. 8. As a matter of logic, Amici have it exactly backward. Again, Plaintiffs' injury is the direct result of the Ballot Order Statute's aggregation of a known bias entirely in favor of a certain type of candidate; it is not a natural result of voters casting ballots independent from the Statute. As a matter of law, even the ballot order cases that Amici *like* and rely upon in their brief do not endorse Amici's theory. For good reason. Election laws that exacerbate certain aspects of human behavior (including common types of errors voters make in attempting to select their preferred candidate, *see Jacobson v. Lee*, 411 F. Supp. 3d 1249 1273-74 (N.D. Fla. 2019)) are not immune from constitutional challenge.[2]

## II. Amici mischaracterize the *Anderson-Burdick* test and Plaintiffs' burdens.

Although Amici appear to agree *Anderson-Burdick* is the appropriate test to apply to Plaintiffs' claims, *see* Br. 4-5, they mischaracterize both its requirements and its application. First, from the outset, Amici ignore that *Anderson-Burdick* is a balancing test, under which the standard of review is determined by "weigh[ing] 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v.*

---

[2] Amici cite only three ballot order cases in their entire brief, and all three were brought by independent or minor parties who sought equal treatment with major parties or by plaintiffs who presented paltry or no evidence at all supporting their claims, presenting entirely different legal concerns as explained by Plaintiffs in prior briefing. *See* Doc. 27 at 4, n.1 (discussing *Clough v. Guzzi*, 416 F. Supp. 1057 (D. Mass. 1976), a case involving a statute that granted first position to incumbents and labeled them as "incumbents," in which plaintiffs failed to prove the advantage was due to position and not explicit incumbency label). In *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708, 712 (4th Cir. 2016), a Libertarian Party candidate sought to eliminate Virginia's three-tiered structure that reserved the first tier for major party candidates (in which, not incidentally, the first tier major party candidates were ordered in each election by *lot*, not by predetermined preference of any party). Similarly, *New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282, 287, 295 (S.D.N.Y. 1994), involved a minor party plaintiff that "tendered no empirical evidence in support of its claims," but still sought to be placed in the first tier of candidates. Finally, Amici repeatedly cite *Arizona Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015), but it did not involve a ballot order statute at all. Moreover, it, too, was a challenge by a minor party that sought to be treated the same as the major parties despite not being similarly situated. *See id.* at 726.

1 *Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Soltysik v. Padilla*, 910 F.3d 438, 443 (9th Cir. 2018).

Under this test, the Ninth Circuit has been clear that rational basis review is *never* appropriate: even when there is only a slight or *de minimis* burden, courts must always conduct the "means-end fit analysis," determining whether the specific justifications offered by the state justify the consequent burden on the plaintiff's rights. *Soltysik*, 910 F.3d at 448-49. Thus, although Amici appropriately recognize that the standard applies to challenges levied at "the layout or organization of ballots," Br. 8, Amici's implication that it operates as a judicial rubber stamp for election laws that are generally applicable and justified by generalized interest in the reliability and integrity of the elections process, *see id*. at 4-5, is incorrect. In every case, the Court must avoid the temptation to apply any "litmus test" to neatly separate valid from invalid restrictions, and instead must balance the specific burdens and justifications before it to make the "hard judgment that our adversary system demands." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190 (2008). Amici invite this Court to skate right over that obligation; it should decline to do so.

Amici are also incorrect in asserting—again, without legal citation—that a constitutional burden is only present "when a law directly and proximately (1) requires [a] voter to expend some discernible additional time, effort, or expense to obtain or cast a duly tabulated ballot for her preferred candidate; or (2) requires a candidate to expend some discernible additional time, effort, or expense to present his or her candidacy to the electorate." Br. 7. *Anderson* itself recognized that a constitutional burden arises when an elections law harms voters' ability "to associate in the electoral arena to enhance their political effectiveness as a group." 460 U.S. at 793. The Ballot Order Statute imposes precisely that burden on the Plaintiffs here, as Plaintiffs have proffered evidence proving that the Statute makes it more difficult to elect Democratic candidates in general. *See* Doc. 14 at 2-8. It also burdens Plaintiffs' right to equal protection, subjecting similarly situated political parties, candidates, and voters to differential treatment. *See Charfauros v. Bd. of Elections*, 249 F.3d 941, 945 (9th Cir. 2001) ("[T]reating [Republican] voters differently

based on their political party would violate the Equal Protection Clause."). As Amici admit, *Anderson-Burdick* applies to constitutional challenges to elections laws, "whether . . . cast as a violation of the government's equal protection obligations, or . . . as an infringement of the voter's First Amendment right to associate with her preferred candidates." Br. 4-5.

Amici's assertion that this Court must leapfrog straight to rational basis review, Br. 10-11, ignores both that the Ninth Circuit has disclaimed the application of rational basis under *Anderson-Burdick*, *see supra* at 4, and that the parties to this action are not only voters, but political party entities themselves. Courts have repeatedly found burdens on a party's or a candidate's electoral prospects substantial enough to elevate the standard of review above rational basis review. *See, e.g.*, *Soltysik*, 910 F.3d at 446 (applying heightened scrutiny to law governing candidates' party label on the ballot); *Jacobson*, 411 F. Supp. 3d at 1281 (applying heighted scrutiny to almost indistinguishable ballot order statute because it was "politically discriminatory").[3]

Moreover, although Amici carefully avoid mentioning any of them, multiple courts have adjudicated challenges to ballot order statutes strikingly similar to the Statute at issue here and have consistently found them sufficiently burdensome to be unconstitutional. *See* Doc. 14, at 10-14; *see also McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 467 (7th Cir. 1977); *Jacobson*, 411 F. Supp. 3d at 1288; *Culliton v. Bd. of Election Comm'rs of DuPage Cty.*, 419 F. Supp. 126, 129 (N.D. Ill. 1976); *Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972); *Mann*, 314 F. Supp. at 679, *aff'd*, 398 U.S. at 955. The ultimate outcome of these cases, it should be emphasized, did not turn on the standard of review applied. Over and over again, courts have found that ballot order statutes that categorically award certain types of candidates the first position on a ballot over others similarly situated are unconstitutional under *any* standard of review.

The Court should reach the same conclusion in this case, where the undisputed

---

[3] As Plaintiffs have noted elsewhere, the Ballot Order Statute itself is also not "politically neutral" or "evenhanded," as Amici claims. *See* Doc. 14 at 10-11; Doc. 27 at 2, 16; Doc. 35 at 2.

evidence establishes that, unless Arizona's Ballot Order Statute is enjoined, it will give a significant advantage to the Republican Party in races up and down the ticket, mandating that Republican candidates be listed first on ballots presented to a full 82% of Arizona's voters in the 2020 general election, including in the State's most populous county. *See* Doc. 15-3. No wonder the Republican Speaker of the House and President of the Senate (both up for re-election this year in districts fully or partially in Maricopa County) felt it worth their while to file an amicus brief.

### III. None of the interests Amici proffer speak to the Ballot Order Statute's favoritism of a specific category of candidate.

In their discussion of the second part of the *Anderson-Burdick* test, Amici make several attempts to justify the Ballot Order Statute, but none actually speak to its favoritism of candidates based on their political affiliation. Doc. 31 at 10-12. *That* is the feature of the Statute that Plaintiffs charge is unconstitutional. In other words, the problem is not that Arizona has chosen to impose a ballot ordering system in the abstract, but that it has chosen to do so with *this law in particular*, which systemically favors groups of candidates based entirely on their party affiliation.

Plaintiffs do not dispute that Arizona may, if it decides it would like to, institute a ballot ordering system that "creates a uniform partisan ordering across each candidate race appearing on the ballot in that county." Doc. 31 at 11. But the Constitution requires that it do so in a way that is politically neutral and gives similarly situated candidates an equal opportunity to be listed first. *See Mann*, 314 F. Supp. at 679 (requiring "nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot"). Where the plain language of the Statute and the undisputed evidence confirm that the vast majority of Arizona voters will see only candidates from one single political party at the top of their ballots, repeatedly and meaningfully skewing elections in the direction of the candidates it favors, *see* Doc. 15-3, it is decidedly not neutral. *See, e.g.*, *Sangmeister*, 565 F.2d at 468 (noting "neutral" ballot ordering system must not "invariably award first position" to the "majority party").

1  Amici also understate the significance of the state's rotation of candidates in primary
2  elections and certain general elections. *See* A.R.S. § 16-502(H); A.R.S. § 16-464. *First*, as
3  the Arizona Supreme Court found in *Kautenberger*, the effects of ballot order have been
4  known in Arizona for so long, that the only reason to *not* rotate ballots would be to confer
5  an advantage on the first-listed candidate. 333 P.2d at 295. Thus, the fact that rotation is
6  undertaken in Arizona's elections consistently *except* when candidates from different
7  parties face off against each other strongly indicates that the real justification for the Statute
8  is political patronage. Yet neither the Secretary nor Amici have asserted such an interest in
9  the Statute, and for good reason: it would doom it definitively. *See, e.g.*, *Crawford*, 553
10 U.S. at 203 ("If [partisan] considerations had provided the only justification for a photo
11 identification requirement, we may also assume that [the requirement] would suffer the
12 same fate as the poll tax at issue in *Harper*."); *Miller v. Moore*, 169 F.3d 1119, 1125 (8th
13 Cir. 1999) ("[W]hile states enjoy a wide latitude in regulating elections and in controlling
14 ballot content and ballot access, they must exercise this power in a reasonable,
15 nondiscriminatory, politically neutral fashion."); *Graves v. McElderry*, 946 F. Supp. 1569,
16 1581 (W.D. Okla. 1996) ("Political patronage is not a legitimate state interest which may
17 be served by a state's decision to classify or discriminate in the manner in which election
18 ballots are configured as to the position of candidates on the ballot.") (citation omitted).

19 *Second*, the fact that Arizona has been able, as an administrative matter, to rotate
20 candidates and manage its elections, without any evidence that rotation has had any effect
21 on "the reliability and integrity of the election process," Br. 4, is highly relevant to the
22 Court's inquiry into the equities in determining whether to issue a preliminary injunction.
23 *See* Doc. 14 at 14-15, Doc. 35 at 9-10. And, in fact, the Secretary has admitted that
24 Arizona's current system has the capacity to rotate all candidates on the general election
25 ballot presently. *See* Doc. 29 at 16, n.8. That alone heavily tilts that factor in favor of issuing
26 an injunction.

27 Finally, like the Secretary, Amici misconstrue the nature of the injunction that
28 Plaintiffs request. So that there is no confusion: Plaintiffs seek an injunction prohibiting the

Secretary from enforcing the Ballot Order Statute and requiring her to use a non-discriminatory system that gives similarly-situated major-party candidates an equal opportunity to be listed first on the ballot. *See* Doc. 1 at 20, ¶ 15; Doc. 14 at 2; Doc. 35 at 11. Plaintiffs have argued that the best way to do so, in keeping with Arizona law's tiered system of ballot order, is to rotate the candidates that are presently listed on the first tier of the general election ballot—i.e., those with a candidate in the last gubernatorial election, A.R.S. § 16-502(E)—by some jurisdictional unit across counties.

Their request for a preliminary injunction, however, is not predicated only on the availability of that specific form of relief. As already discussed, there are multiple ways that the ballot might be ordered to remove the constitutional infirmity of the current system. *See supra* at 6-7; Doc. 14 at 2, 17; Doc. 27 at 14, 15; Doc. 35 at 11. Amici's assertion that Plaintiffs "ask the Court to discover a new constitutional requirement that candidates be randomly ordered on every ballot," Doc. 31 at 12-13, misunderstands Plaintiffs' request for relief.

**CONCLUSION**

For the reasons discussed above, and in Plaintiffs' prior filings with the Court, Plaintiffs respectfully request that the Court grant their motion for preliminary injunction and deny the Secretary's motion to dismiss.

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Dated: February 3, 2020 | */s     Sarah R. Gonski* |
| | | Sarah R. Gonski (Bar No. 032567) |
| 4 | | **PERKINS COIE LLP** |
| | | 2901 North Central Avenue, Suite 2000 |
| 5 | | Phoenix, Arizona 85012-2788 |
| | | Telephone: (602) 351-8000 |
| 6 | | Facsimile:  (602) 648-7000 |
| | | SGonski@perkinscoie.com |

Marc E. Elias (WDC Bar No. 442007)*
Elisabeth C. Frost (WDC Bar No. 1007632)*
John M. Geise (WDC Bar No. 1032700)*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile:  (202) 654-6211
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

Abha Khanna (WA Bar No. 42612)*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000
Facsimile:  (206) 359-9000
AKhanna@perkinscoie.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on Monday, February 3, 2020, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*/s/ Michelle DePass*