Mark Brnovich
Attorney General
Firm Bar No. 14000

Linley Wilson (027040)
Deputy Solicitor General
Kara Karlson (029407)
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ  85004-1592
(602) 542-4951
linley.wilson@azag.gov
kara.karlson@azag.gov
adminlaw@azag.gov

Mary R. O'Grady (011434)
Kimberly I. Friday (035369)
Emma J. Cone-Roddy (034285)
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012–2793
(602) 640-9000
mogrady@omlaw.com
kfriday@omlaw.com
econe-roddy@omlaw.com

*Attorneys for Defendant Arizona Secretary
of State Katie Hobbs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brian Mecinas, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State,<br><br>　　　　　　　Defendant. | Case No: CV-19-05547-PHX-DJH<br><br>**ARIZONA SECRETARY OF STATE'S SUR-REPLY IN FURTHER OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Arizona Secretary of State Katie Hobbs (the "Secretary") respectfully submits this Sur-Reply memorandum in Further Opposition to Plaintiffs' Motion for Preliminary Injunction. As the Secretary explained in her opposition, Plaintiffs' assertion of a large ballot order effect in Arizona's partisan general elections relies on statistical modeling by their expert, Dr. Jonathan Rodden, that does not apply modern statistical techniques. In Plaintiffs' reply brief ("Reply") (Doc. 35) they seek to disqualify the Secretary's expert, Mr. Sean Trende, and object to his report in order to prevent the Court from considering any of several properly calibrated statistical models—each of which casts substantial doubt on the existence of a ballot order effect, let alone a large one. They support their arguments with a reply report from Dr. Rodden ("Second Rodden Rep.") (Doc. 36-1) Dr Rodden's reply report includes new and unsupported claims about how he designed his original model, mischaracterizes the academic literature, and incorrectly speculates about Mr. Trende's motives. The Court should overrule Plaintiffs' objection to Mr. Trende's report and deny the motion for preliminary injunction.

## I. As every court to consider this specific issue has found, Mr. Trende is qualified to testify on the statistical analysis of elections.

Plaintiffs argue that Mr. Trende is not qualified to testify for several reasons. None of these reasons are persuasive.

*First*, Plaintiffs complain that Mr. Trende does not identify himself particularly as an expert in ballot order effects and does not hold himself out as an expert in the statistical analysis of elections. This is not true; Mr. Trende does hold himself as an expert in the statistical analysis of elections. (Doc. 30-1) ("First Trende Rprt..") ¶¶ 5-27. Mr. Trende analyzes elections results professionally—he has "studied and written extensively about demographic trends in the country, exit poll data at the state and federal level, public opinion polling, and voter turnout *and voting behavior*." *Id*. ¶ 12 (emphasis added). He has also authored several books and book chapters which deal with statistical analysis of elections and demographics. *Id*. ¶¶ 15-17. In other words, just like Dr. Rodden, Mr. Trende has developed expertise in analyzing election results, in

consideration of demographics and other factors, while not having specifically written about ballot order effects. He also has an advanced degree in applied statistics. *Id.* ¶ 10.

*Second*, Plaintiffs object to Mr. Trende's experience and training. Mr. Trende has a master's degree in applied statistics. *Id.* ¶ 9. He is a doctoral candidate in political science at The Ohio State University who has "completed all of [his] coursework and ha[s] passed comprehensive examinations in both methods and American Politics." *Id.* ¶ 10.[1] Plaintiffs object that Mr. Trende, despite his years of professional work in elections analysis, and advanced training in statistical analysis and political science, is not qualified because he has not yet received a Ph.D.  As previous courts have explained while rejecting this identical attack against Mr. Trende, "neither *Daubert* nor Rule 702 require particular credentials or require that expert witnesses be academics or PhDs. . . . Although not a social scientist, Mr. Trende has studied, written on, and analyzed voting trends and political geography throughout the United States. He has developed an expertise in this area, and his opinions are informative to the issues before us and are helpful in conducting our analysis." *Whitford v. Gill*, 218 F. Supp. 3d, 837, 912 n.319 (W.D. Wis. 2016) (internal citations, quotation marks and alterations omitted), *vacated and remanded*, 138 S.Ct. 1916 (2018). In the three years since *Whitford* acknowledged Mr. Trende's expertise, he has obtained an advanced degree in applied statistics, and completed all course work towards a doctorate in political science; in short, his already strong credentials have been bolstered by further "knowledge, skill, experience, training, [and] education." Fed. R. Evid. 702.

Similarly, Plaintiffs object that Mr. Trende has never published any statistical analysis in a peer-reviewed journal.  Again, nothing requires an expert to have published in a particular forum.  And while Plaintiffs argue (at 5) that "Mr. Trende's strongest claim to expertise is having previously been hired as an expert," this statement ignores Mr. Trende's advanced statistical training, his book, his book chapters, his work for various election analysis websites, his teaching, his jobs with RealClearPolitics and

---

[1] Plaintiffs incorrectly state that Mr. Trende is still completing his coursework.

Dr. Larry Sabato's "Crystal Ball", and his work for the Bipartisan Policy Center and the American Enterprise Institute. First Trende Rprt. ¶¶ 11-21. Plaintiffs minimize Mr. Trende's record, even discounting that they cite nothing (and nothing exists) to support their apparent position that experts must have a Ph.D. and have published in peer reviewed journals to provide testimony.

Given Mr. Trende's extensive qualifications via both his academic and professional experience, it is unsurprising that courts across the country have repeatedly (and all before Mr. Trende completed his master's degree and doctorate coursework) rejected attempts to disqualify him on the same grounds Plaintiffs suggest. *See Whitford*, 218 F. Supp. 3d at 912 n.319 (rejecting motion in limine to exclude Mr. Trende); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 723 (S.D. Ohio 2016) (rejecting motion in limine to exclude Mr. Trende); *Common Cause v. Rucho*, 279 F. Supp. 3d 587, 647 n.24 (M.D. N.C. 2018) ("We conclude that Mr. Trende's training and experience render him qualified to provide expert testimony regarding congressional elections, electoral history, and redistricting, and therefore overrule League Plaintiffs' objection."). Indeed, despite several challenges to Mr. Trende's expertise *before* he completed his master's degree and his doctorate coursework and demonstrated his proficiency in statistical analysis to The Ohio State University, no court has ever rejected his qualifications as an expert. Plaintiffs also cite *Democratic National Committee v. Reagan*, 329 F. Supp. 3d 824 (D. Ariz. 2018), for the proposition that Mr. Trende's opinion "deserved little weight" for various reasons (see Reply at n.3); yet Plaintiffs' own citation does not support their contention here that Mr. Trende is not qualified to render an opinion. Indeed, the DNC plaintiffs, who are also parties in this lawsuit, did not object to Mr. Trende's expertise, or seek to preclude his testimony in *Democratic National Committee v. Reagan*. More importantly, the district court found in *Democratic National Committee v. Reagan* that "some of [Mr. Trende's] criticisms were worth considering." 329 F. Supp. at 837. Here, Mr. Trende's report presents legitimate critiques of Plaintiffs' expert report and the statistical models chosen by Plaintiffs' expert. In short, Plaintiffs'

attempt to disqualify Mr. Trende by simply relying on other matters where Trende rendered expert opinions on different subjects is unavailing.

## II. Dr. Rodden's reply report is inaccurate and unpersuasive.

Dr. Rodden's reply report accuses Mr. Trende of making several errors in statistical analysis. However, Dr. Rodden's report relies on conclusory statements and statistical claims for which he does not provide numerical support. His criticisms of Mr. Trende and his defenses of his original model are also wrong.

First, Dr. Rodden accuses Mr. Trende of either carelessly or nefariously selecting his variables. As Mr. Trende explained, he was concerned by Dr. Rodden's omission of typical demographic controls in his model based on age and race, and re-ran Dr. Rodden's model using the demographic controls Dr. Rodden chose to omit. First Trende Rprt. ¶ 33. Mr. Trende also cited academic literature to support the use of these controls. *Id*. Dr. Rodden ignores Mr. Trende's explanation of his variable choices, claims—without support or citation—that these demographic controls are not necessary, and accuses Mr. Trende of reverse engineering his model by hunting for the variables that obtained the desired result. Second Rodden Rprt. at 6-7. Dr. Rodden's assertions are wrong. To demonstrate this, Mr. Trende looked at a new model that Dr. Rodden introduced in his reply report that abandons demographics entirely, added one new, non-demographic variable to it, and produced a result far more skeptical of any ballot order effect. *See* Second Cone-Roddy Decl. Ex. A ("Second Trende Rprt.") at 5-7. This was not the model Mr. Trende used because his approach was to use the theoretically important variables that Dr. Rodden had omitted without explanation. *Id.* at 9-10.

Dr. Rodden also accuses Mr. Trende of creating a model plagued with what is known as multicollinearity. Second Rodden Rprt. at 7. In essence, multicollinearity is a problem in statistical analysis when two variables are so closely associated that they cannot be measured independently. Second Trende Rprt. at 11. There are multiple statistical tests that can be applied to determine whether variables are problematically multicollinear; however, Dr. Rodden did not refer to any of them. Second Trende Rprt.

at 14-15; *compare* Second Rodden Rprt. at 4, 7.  Under any academically recognized approach to multicollinearity, Mr. Trende's model is well within the acceptable ranges. Second Trende Rprt. at 15-16.

Similarly, Dr. Rodden's critiques of the various methodologies Mr. Trende suggested to deal with a separate problem—the correlation of election results— miss their mark. Mr. Trende explained that the power of a statistical model relies on observations (here, the share of the vote a Democratic or Republican candidate gets) being independent; this is plainly not the case in election returns. First Trende Rprt. ¶ 42. In particular, it is necessary to adjust a model for this problem when a treatment effect (here, ballot order) is applied to a cluster of observations. *Id.*  This is precisely what happens here—under Arizona's Ballot Order Statute (A.R.S. § 16–502(E)), ballot order is determined at the county level for all elections within the county.

Notably, Dr. Rodden does not dispute this—Dr. Rodden appears to agree. *See* Second Trende Rprt. at 20 (noting Dr. Rodden's apparent acknowledgment of the critique).  Instead, he complains that the four techniques Mr. Trende used are either inappropriate in elections analysis or were used incorrectly by Mr. Trende.  Second Rodden Rprt. at 8-19. These critiques fail on the merits. Second Trende Rprt. at 25-36. But even if they did not, Dr. Rodden never responds to the central issue: he is treating elections outcomes as independent, which artificially increases the number of observations.  As Mr. Trende observed, this allows Dr. Rodden to have "false confidence in the test power, when in reality [he is] simply decreasing the accuracy of the estimated 'margin of error.'" First Trende Rprt. ¶ 54.

### III. Conclusion.

Mr. Trende is fully qualified to testify as an expert. His opinions are supported by a robust academic literature and well-reasoned statistical choices. They demonstrate that Plaintiffs have not offered proof that a large ballot order effect exists in Arizona for partisan, general elections. The Plaintiffs' Motion for a Preliminary Injunction should be denied.

Respectfully submitted this 21st day of February, 2020.

OSBORN MALEDON, PA

s/Emma J. Cone-Roddy
Mary R. O'Grady (011434)
Kimberly I. Friday (035369)
Emma J. Cone-Roddy (034285)
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012–2793
(602) 640-9000

MARK BRNOVICH
ATTORNEY GENERAL

Linley Wilson (027040)
Deputy Solicitor General
Kara Karlson (029407)
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone (602) 542-4951
Facsimile (602) 542-4385

*Attorneys for Defendant Arizona Secretary of State Katie Hobbs*